GROUP HOSPITALIZATION,
INC., Petitioner,

v.

DISTRICT OF COLUMBIA COMMIS-
SION ON HUMAN RIGHTS,
Respondent.

No. 9623.

District of Columbia Court of Appeals.

Argued March 9, 1976.

Decided Nov. 10, 1977.

Charles J. Steele and Jacqueline Saue, Washington, D. C., for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., at the time of argument and when the brief was filed, with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., when the brief was filed, Louis P. Robbins, Principal Deputy Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before KERN and HARRIS, Associate Judges, and REILLY, Chief Judge, Retired.

HARRIS, Associate Judge:

The District of Columbia Commission on Human Rights (the Commission) found that the maternity leave policies of petitioner Group Hospitalization, Inc., (GHI) constituted discrimination on the basis of sex, in

violation of former Article 47, § 4(a) of the D.C. Police Regulations. Certain sanctions also were ordered by the Commission. We conclude that the Commission erred, and vacate its Final Decision and Order.

I

During the period from November 1, 1968, to June 1, 1972, GHI required pregnant employees to go on unpaid leave at the end of the sixth month of their pregnancies. Such leave could continue, at the employee's choice, for a maximum of three months after childbirth. Like all other employees on extended leave, i. e., for ten or more consecutive workdays, they did not earn annual or sick leave during their absences from work. Employees on maternity leave were not entitled to use accumulated sick leave and had to pay the full costs of their life and hospitalization insurance, while other employees on unpaid leave for 20 days or more had to pay only part of such costs. Employees on maternity leave, however, could elect to be paid for accrued annual leave at the time they stopped work. That option was not available to employees on extended leave for other reasons.

Those employment policies were in effect when Mrs. Karen Manzo and Mrs. Tamara Faggen became pregnant while they were employees of GHI. Although both women presented statements from their physicians attesting that they were able to continue working, both were obliged to take maternity leave. Mrs. Manzo went on leave on January 1, 1972, six days before she would have been required to do so. GHI dismissed her when she did not return to work within three months after giving birth to her child. Mrs. Faggen received a partial exception from GHI's mandatory leave policies, and remained at work on a temporary basis for seven additional weeks in order to complete some programs. After that extension, Mrs. Faggen resigned instead of taking maternity leave. Her reason for doing so was that maternity leave provided no benefits, while her resignation would let her take advantage of the company's thrift plan. (The record does not explain the thrift plan.)

On June 1, 1972, GHI modified its cost allocation policies for insurance coverage during maternity leave, but retained the requirement that a pregnant employee take unpaid leave after her sixth month of pregnancy. In July 1972, Mrs. Alice Horton notified GHI, her employer, that she was pregnant, but submitted her physician's statement that she was able to work until her confinement. In October, three months before her expected delivery date, Mrs. Horton resigned rather than take maternity leave, for the same reasons as had Mrs. Faggen. Mrs. Horton, however, continued to work an additional month on a temporary basis after the sixth-month deadline.

On November 11, 1972, GHI changed its maternity leave policies, thenceforth allowing a pregnant employee to work after the sixth month of pregnancy if she submitted a physician's letter (1) expressing a professional opinion as to her ability to continue working, and (2) providing a recommendation as to when she should take her maternity leave. Under that policy, Mrs. Carol Bresnahan stayed on her job at GHI until the day before she gave birth to her baby. While Mrs. Bresnahan, as did the other complainants, contended that she should have been entitled to use her accumulated sick leave for maternity leave purposes, her primary complaint was that GHI offered her a promotion to a supervisory post and then retracted the offer when she notified her employer that she was pregnant. The offer and retraction occurred in August 1972; the promotion otherwise would have become effective on September 10. GHI's reason for withdrawing the offer was that it could not leave the position vacant for the length of time Mrs. Bresnahan was expected to be absent from work due to her pregnancy. GHI contends that it would have followed the same procedure on a promotion offered to any employee who was leaving for an extended period of time, irrespective of the cause, if the post required the employee's continued presence during the expected period of absence. Mrs. Bresnahan returned to work in July 1973, and thereafter received a promotion

to a position equivalent to the one previously denied her. (Indeed, the pay was slightly higher.)

All four women filed complaints with the Commission. After the submission of stipulated facts and legal arguments, the Commission found GHI guilty of discrimination in employment on the basis of sex. The Commission awarded back pay as well as accrued annual and sick leave to Mrs. Manzo, Mrs. Faggen, and Mrs. Horton. Mrs. Bresnahan was awarded damages measured by the difference between her pre-promotion salary and the salary she would have earned had she received the earlier promotion. The damages were calculated from the time the first promotion offer was withdrawn until the time she took maternity leave. GHI petitioned this court for review of the Commission's action. See D.C.Code 1977 Supp., § 1–1510; D.C.Code 1973, § 11–722.

## II

Petitioner challenges the Commission's order on the following grounds: (1) the Commission lacked authority to award monetary damages; (2) GHI's refusal to make accumulated sick leave available for maternity leave does not constitute unlawful sex discrimination; and (3) Carol Bresnahan was not discriminated against when the promotion offered to her was withdrawn because she would be absent from work due to pregnancy.

## A.

■ We agree with petitioner that the former Article 47 of the D.C. Police Regula-

tions is applicable to this proceeding.[1] Article 47, § 9(b), provided only that the Commission's predecessor (the former Council on Human Relations) should make "conclusions and recommendations for correction of the illegal practice, with notice that if said illegal employment practice is not corrected within fifteen (15) calendar days of the service of said conclusions and recommendations, the [Commission] will refer the matter to the Corporation Counsel for enforcement." .Consequently, the Commission's award of damages to Mrs. Bresnahan, and of back pay and accrued annual sick leave to Mrs. Manzo, Mrs. Faggen, and Mrs. Horton, exceeded its authority and must be vacated. See Newsweek Magazine v. Commission on Human Rights, D.C.App., 376 A.2d 777 (1977); Communications Workers of America, AFL–CIO v. Commission on Human Rights, D.C.App., 367 A.2d 149 (1976); Mendota Apartments v. Commission on Human Rights, D.C.App., 315 A.2d 832 (1974).

## B.

■ We turn now to petitioner's second challenge. In light of the Supreme Court's decisions in Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), and General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), we conclude that GHI's determination not to allow employees on maternity leave to use accumulated sick leave does not constitute sex-based discrimination.[2]

1. The events complained of in this case took place during the period from January 1, 1972, to March 2, 1973. On June 19, 1973, the Commission informed GHI that it had been charged with unlawful sex discrimination by the four complainants. Title 34 of the D.C. Rules and Regulations, generally called the "Human Rights Law," which repealed Article 47, was not enacted until November 17, 1973, and is not applicable to this proceeding. (Section 33.4 of Title 34 provides that the Commission, in unlawful discrimination cases, may take affirmative action, "including but not limited to the hiring, reinstatement or upgrading of employees, with or without back pay; . . . payment of compensatory damages to the person

aggrieved by such practice. . . .") We previously have concluded that this section, while intended to be remedial, was not intended to be given effect in cases pending at the time of its enactment. See Newsweek Magazine v. Commission on Human Rights, D.C. App.. 376 A.2d 777 (1977).

2. Petitioner's mandatory leave policy was changed on November 11, 1972. Complainants do not take issue with the present maternity leave policy (nor, of course, could they). In light of our holding that the Commission could not award damages in this case, it is not necessary for us to express any opinion as to the legality of the prior policy.

*Geduldig v. Aiello, supra,* rejected a constitutional challenge to California's disability insurance system for private employees. It covered virtually all disabilities lasting longer than eight days but not more than 26 weeks—with the exception of normal pregnancy. The Court applied a rational basis test and held that the pregnancy exclusion did not violate the equal protection clause, pointing out that a fully comprehensive program would be far more expensive, and might force the state either to subsidize a program formerly supported by employee contributions or to reduce benefits for disabilities already covered.

Mr. Justice STEWART's majority opinion rejected the dissenters' claim that the exclusion was a sex-based classification subject to strict scrutiny under the plurality opinion in *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973):

> The dissenting opinion to the contrary, this case is thus a far cry from cases like *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), and *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), involving discrimination based upon gender as such. The California insurance program does not exclude anyone from benefit eligibility because of gender but merely removes one physical condition—pregnancy—from the list of compensable disabilities. While it is true that only women can become pregnant it does not follow that every legislative classification concerning pregnancy is a sex-based classification like those considered in *Reed, supra,* and *Frontiero, supra.* Normal pregnancy is an objectively identifiable physical condition with unique characteristics. Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition.

The lack of identity between the excluded disability and gender as such under this insurance program becomes clear upon the most cursory analysis. The program divides potential recipients into two groups—pregnant women and nonpregnant persons. While the first group is exclusively female, the second includes members of both sexes. The fiscal and actuarial benefits of the program thus accrue to members of both sexes. [417 U.S. at 496–97 n.20, 94 S.Ct. at 2492.]

In *General Electric Co. v. Gilbert, supra,* the same Justices who composed the majority in *Geduldig* ruled that the exclusion by an employer of pregnancy from sickness and accident coverage did not violate the prohibition against discrimination in employment on the basis of sex which is contained in Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2 (1970).[3] Mr. Justice REHNQUIST's opinion for the Court relied upon the passages in *Geduldig* which we have just quoted. 429 U.S. at 134–35, 97 S.Ct. 401. The *Gilbert* decision invalidated an Equal Employment Opportunity guideline, 29 C.F.R. § 1604.10(b), upon which the Commission relied in this case. The Commission also relied upon the Fourth Circuit's decision in *Gilbert,* 519 F.2d 661 (4th Cir. 1975), and other federal court decisions construing Title VII which now have no validity. [*Hutchison v. Lake Oswego School District,* 519 F.2d 961 (9th Cir. 1975), *vacated and remanded,* 429 U.S. 1033, 97 S.Ct. 725, 50 L.Ed.2d 744 (1977); *Communications Workers of America, AFL–CIO v. American Telephone & Telegraph Co.,* 513 F.2d 1024 (2d Cir. 1975), *vacated and remanded,* 429 U.S. 1033, 97 S.Ct. 724, 50 L.Ed.2d 744 (1977); *Wetzel v. Liberty Mutual Insurance Co.,* 511 F.2d 199 (3d Cir. 1975), *vacated on other grounds,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976).] Although the present case involves sick leave benefits, rather than insurance coverage, we conclude that the broad reasoning of *Geduldig*

---

**3.** The prohibitions against sex discrimination which were contained in Article 47 were similar to those contained in Title VII.

and *Gilbert* also applies to such claims brought under the former Article 47 and the present Human Rights Law.

GHI's policy of prohibiting female employees from using their accrued sick leave while absent from work on maternity leave does not exclude females from sick leave benefits on the basis of gender, but instead removes pregnancy from sick leave coverage. While we recognize that a showing of gender-based discriminatory effect might have been sufficient to establish a prima facie violation of Article 47, we adhere to the Court's conclusion in *Gilbert* that "gender-based discrimination does not result simply because an employer's [sick leave benefits are] less than all inclusive." *General Electric Co. v. Gilbert, supra,* 429 U.S. at 138–39, 97 S.Ct. at 409.

In the absence of any evidence of legislative intent to give the term sex discrimination the broad definition for which the Commission contends, *see General Electric Co. v. Gilbert, supra,* 429 U.S. at 143–45, 97 S.Ct. 401; *Willingham v. Macon Telegraph Publishing Co.,* 507 F.2d 1084, 1090 (5th Cir. 1975) (en banc), we decline to give the local enactment a more expansive interpretation than the federal one. The complaints of Mrs. Manzo, Mrs. Faggen, and Mrs. Horton therefore must be dismissed.

### III

■ Mrs. Bresnahan's primary complaint challenges the company's delay of her promotion until after her return to work. (The period of her absence was approximately three and one-half months, from March 21 to about July 9, 1973.) The stipulation before the Commission included GHI's position that it similarly would have refused a promotion to any employee about to leave for an extended period of time if the higher position required his or her presence at work during the proposed period of absence. Nothing in the record suggests the contrary. Mere disbelief of evidence is not a valid basis for inferring that the opposite is true. *Seymour v. Oceanic Navigating Co.,* 453 F.2d 1185, 1191 (5th Cir. 1972); *Bankers Life & Casualty Co. v.*

*Guarantee Reserve Life Insurance Co. of Hammond,* 365 F.2d 28, 34 (7th Cir. 1966), cert. denied, 386 U.S. 913, 87 S.Ct. 862, 17 L.Ed.2d 785 (1967). *See Nishikawa v. Dulles,* 356 U.S. 129, 137, 78 S.Ct. 612, 2 L.Ed.2d 659 (1958); *Moore v. Chesapeake & Ohio Railway,* 340 U.S. 573, 576, 71 S.Ct. 428, 95 L.Ed. 547 (1951). The Commission's conclusion that Mrs. Bresnahan was discriminated against on the basis of sex is not "supported by and in accordance with the reliable, probative, and substantial evidence," as the District of Columbia Administrative Procedure Act requires. D.C.Code 1977 Supp., § 1–1509(e). Since there is no evidence in the record indicating sex discrimination on this issue, the Commission's order also must be overturned as to Mrs. Bresnahan.

*Vacated.*