321 F.Supp.2d 1127 (2004)
Connie SNYDER, Plaintiff(s),
v.
YELLOW TRANSPORTATION, INC., Defendant(s).
No. 4:02 CV 01713 RWS.
United States District Court, E.D. Missouri, Eastern Division.
June 14, 2004.
*1128 Robert McKinley, Lathrop & Gage L.C., Kansas City, KS, for Defendant.

ORDER
SIPPEL, District Judge.
Connie Snyder alleges that she was subjected to a course of counseling, reprimands, and eventual termination that were all motivated in part by her gender and her pregnancy. Her complaint alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, and the Missouri Human Rights Act.
This matter is before the court on Yellow Transportation, Inc.'s Motion for Summary Judgment [Doc. # 50]. Because material issues of material fact remain in dispute, the motion will be denied.

I. FACTS
Yellow Transportation, Inc. ("Yellow")transports general commodities by truck. The company has over 20,000 employees throughout the United States and Canada.
Connie Snyder ("Snyder") was hired by Yellow on February 22, 1999 as an Associate Account Manager. Snyder reported to David Neil, Yellow's Area General Manager ("Neil"). Snyder also reported to Darren Mikesich, Director of Business Development for Yellow, ("Mikesich"). Early in her employment, Snyder provided her managers with written daily sales reports. Snyder was counseled on more than one occasion for failure to timely file those reports.
On July 1, 2000, Snyder was promoted from Associate Account Manager to Account Manager. Snyder earned a performance award given to top account managers at Yellow for her effort in 2000.
*1129 In March, 2001 Snyder informed Yellow she was pregnant. On April 3, 2001 Snyder's doctor wrote a letter to Snyder's manager, explaining that because of her already-existing diabetes the pregnancy was considered high risk. The doctor warned that as a result, Snyder would not be physically able to maintain her pre-pregnancy pace on the job.
On September 13, 2001, Snyder began to experience problems and was ordered to remain on bed rest for the remainder of her pregnancy. She began her 12 week FMLA leave pursuant to Yellow's policies on September 17, 2001. Although Snyder continued to handle one of her accounts from her home, the rest of her sales territory was divided among several other account managers while she was on leave. Snyder's baby was born on October 29, 2001. Snyder was released to return to work effective December 24, 2001.
In late 2000, Yellow started laying off employees in response to the economic conditions affecting the transportation industry. By December, 2001, Yellow had laid off more than 2,000 employees.
A regular review of account manager performance was compiled as of June 30, 2001. At that time, the majority of the account managers in the St. Louis area, including Snyder, were rated "somewhat below expectations." At that time, Neil acknowledged on her performance evaluation that Snyder's performance slide was due in part to her pregnancy.
In mid December, 2001, Yellow announced a corporate reorganization, effective January 1, 2002. As part of that reorganization, one account manager position was scheduled to be dropped from the St. Louis terminal. Yellow traditionally relied on the objective performance numbers of the regular personnel reviews to evaluate who would be eliminated during these reorganizations. For the December 2001 reorganization, Neil and Mikesich, relied on the June 30, 2001 review to advise Terry Budimlija who should be eliminated from the St. Louis terminal.
In mid December, 2001, Snyder called Yellow and gave notice she was able to return to work. At a meeting on December 21, 2001, Snyder was notified by Neil and Mikesich that her position was the being eliminated as part of the corporate reorganization.
Snyder sought some justification for her release from Jerome Wilson, a Human Resource Manager at Yellow. He responded by letter dated January 4, 2002 stating that "[Yellow is] not obligated nor will we provided you with any additional written justification for our restructure decisions."

II. LEGAL STANDARDS

A. Summary Judgment Standard
In determining whether summary judgment should issue, I must view the facts and inferences from the facts in the light most favorable to plaintiff. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Defendant has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a defendant has met this burden, the plaintiff cannot rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Thus, summary judgment is not appropriate unless *1130 all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party. Hardin v. Hussmann Corp., 45 F.3d 262, 264 (8th Cir.1995).
Summary judgment is appropriate in employment discrimination cases only in those rare instances where there is no dispute of fact and where there exists only one conclusion. See Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir.1994). I remain mindful that the Appeals Court for the Eighth Circuit has stated that "summary judgment should seldom be granted in discrimination cases." Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir.2000).

B. Title VII and MHRA Standard of Reveiw
Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer  ... to discharge any individual, ... because of such individual's ... sex, ...." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act amended the Title VII definition of "because of sex" to specifically include "because of or on the basis of pregnancy, childbirth, or related medical conditions;...." 42 U.S.C. § 2000e(k). See Lang v. Star Herald, 107 F.3d 1308, 1311 n. 2 (8th Cir.1997) (explaining purpose and effect of Congress's enactment of the Pregnancy Discrimination Act).
The United States Supreme Court has erased the distinction between direct and circumstantial evidence in Title VII cases in Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). In that case, the Supreme Court held that to prove employment discrimination a plaintiff need only show, by direct or circumstantial evidence, that defendant has engaged in a forbidden employment practice. Id at 96, 123 S.Ct. 2148.
Both the Supreme Court and the Eighth Circuit have continued to apply McDonnell Douglas after the decision in Desert Palace. See Raytheon Co. v. Hernandez, 540 U.S. 44, ___, 124 S.Ct. 513, 518, 157 L.Ed.2d 357 (2003); Cherry v. Ritenour School Dist., 361 F.3d 474, 478 (8th Cir.2004) (utilizing the McDonnell Douglas framework in post-Desert Palace case without comment). I will view all evidence on the record, direct and circumstantial, using the McDonnell Douglas burden-shifting paradigm to analyze this case.
The analysis of Snyder's Title VII claims will also apply to her MHRA claims in this case. Fast v. Southern Union Co., 149 F.3d 885, 889 (8th Cir.1998)

III. ANALYSIS
Snyder claims that she has met the three-stage burden-shifting paradigm first set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Applied in this case, Snyder must establish a prima facie case of pregnancy discrimination. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir.2002). If the initial burden is satisfied, the burden then shifts to the Yellow to rebut the prima facie case by articulating legitimate, nondiscriminatory reasons for terminating Snyder. Id. To defeat summary judgement, Snyder must then produce evidence that the proffered reason was merely a pretext for discrimination. Williams v. Saint Luke's-Shawnee Mission Health Sys., Inc., 276 F.3d 1057, 1059 (8th Cir.2002).
To establish a prima facie case, Snyder must first have evidence (1) that she belonged to a protected class, (2) her performance met his employer's legitimate expectations; (3) she was discharged; and (4) there was an additional showing of sex or pregnancy as a factor in the discharge *1131 decision. Spencer v. Stuart Hall Company, Inc., 173 F.3d 1124 (8th Cir.1999).
In this case, the prima facie case is undisputed. Snyder is a woman, who at the time of her termination was recovering from a difficult pregnancy. Prior to her pregnancy, Snyder performed at or above management's expectation. As part of the announced reduction in force, Snyder was terminated prior to her return from maternity leave. Evidence on the record supports a finding that Snyder's sex and recent pregnancy were factors considered in the decision to terminate her employment with Yellow.
Yellow insists that there is no evidence that would allow a reasonable fact finder to conclude that Snyder was treated differently from other female or non-pregnant employees, or that the nondiscriminatory reasons proffered by the defendant for its challenged actions were pretextual. Because material evidence is disputed by the parties, I cannot agree.

A. Summary Judgment Will Be Denied as to the Title VII and MHRA Claims
During her job interview, Neil and Mikesich asked Snyder whether she was married, how many children she had, and whether she planned to have more children. The Eighth Circuit has considered such questions a per se violation of Title VII. King v. Trans World Airlines, 738 F.2d 255, 258-259 (8th Cir.1984). Neil and Mikesich denied that the questions were asked, but offered that if they were asked, the questions were designed to determine eligibility for child care benefits. Yellow indicated that the kind of pregnancy-related questions they put to Ms. Snyder during her hiring interview violate its own company policy. There is no evidence, however, that the same questions were ever posed to a prospective male account manager.
On January 3, 2000 Snyder complained to her manager that she was one of only two people, both women, who were required to file daily sales reports. On January 4, 2000, Snyder was served with a Notice of Corrective Action ("NOCA") for several performance problems. A Notice of Corrective Action is a probation period to resolve specific problems as described in the Notice. Among the reasons for the NOCA was that Snyder had an unconstructive attitude, and made degrading remarks about fellow employees which contributed to a lack of teamwork and efficiency. By April, 2000, Snyder complied with most of the issues in the NCOA and was removed from probation.
In early April, 2001, Snyder was counseled on her ongoing failure to follow sales procedures and was again required to submit daily sales reports. In July, 2001, Neil discussed an inside sales position with Snyder. The position would not require travel, or entertaining customers. It is alleged that Neil said that such a job would be "more appropriate for a new mom." Snyder told Neil she was not interested in an inside sales position.
John Haase has worked for Yellow for 20 years. He has been an Account Manager since February, 2001. After Snyder left for maternity leave, and during a discussion about reassigning the sales territories, Haase reported that Neil considered giving Snyder an undesirable territory. Haase indicated to Neil that the assignment may cause Snyder to quit. Neil did not respond to that comment. There is an e-mail message written by Neil which suggests that the reorganization of sales territories made in October, and without considering Snyder's return, were considered permanent. Haase also reported that Neil has made a number of disparaging remarks about female sales reps calling them at one time "a pain in the ass."
*1132 After Snyder's discharge, Haase has testified that Neil asked him to produce a letter outlining any customer's alleged problems with Snyder's job performance. Neil asked Haase to backdate the letter to October 2001 and asked Haase to "help a guy out" and said "I need some things for her file." Haase refused to prepare a backdated document.
Jennifer Bauman worked with Yellow from November, 2000 until November, 2001. Bauman reported that during late 2001, Mikesich stated that "men made better Account Managers than women because women take time off to take care of their children and the like." She also reported that Mikesich said "it wasn't fair that men have to keep working while women get time off for things like maternity leave."
Jerome Wilson is a Human Resource Manager for Yellow who is in charge of the St. Louis area. He testified that the standard procedure for reductions in force was to use objective evaluation factors to decide who must be eliminated. Overall job performance as rated in a mid-year review is the objective criteria specifically cited in other, similar reduction in force memorandums. Yellow also takes into account documented performance problems. The Eighth Circuit has made it clear that when corporate decision makers deviate from established decision criteria and utilize other decision criteria that select with particularity for the plaintiff a powerful inference of unlawful discrimination arises. Glover v. McDonnell Douglas Corp., 981 F.2d 388, 392-393 (8th Cir.1992).
In the case of the December 2001 reduction in force, the St. Louis area account managers were evaluated by the June 30 review. In that report, fifteen (15) account managers are evaluated. They are ranked, from highest score to lowest score based on their Overall Score. Connie Snyder does not have the lowest Overall Score on that report.
Snyder has produced evidence of unlawful discrimination through the her testimony and that of John Haase and Jennifer Bauman. The alleged statements by Mikesich and Neil are evidence of sex and pregnancy discrimination and demonstrate a discriminatory animus. Further, the alleged statements were made by decision makers and were allegedly made within 30 to 90 days prior to Snyder's termination. I find that because material issues of fact remain in dispute, Yellow's motion for summary judgment will be denied.

B. Snyder's Family and Medical Leave Act Claim Will Be Dismissed
The Family and Medical Leave Act of 1993 entitles eligible employees to take up to 12 work weeks of unpaid leave annually for any of several reasons, including pregnancy. 29 U.S.C. § 2612(a)(1)(C). Denial of the rights protected under the Act creates a private right of action to seek both equitable relief and money damages against an employer in any court. § 2617(a)(2).
There is no evidence in the record to suggest that Yellow denied Snyder's leave from September through December in violation of the FMLA or in any way interfered with her rights under the statute. Because there is no issue of material fact Yellow is entitled to judgment as a matter of law on Snyder's FMLA claim.
Accordingly,
IT IS HEREBY ORDERED that Yellow's MOTION for Summary Judgment [Doc. # 50] is GRANTED as to the FMLA Claim and DENIED as to her Title VII and Missouri Human Rights Act claims.