Carol SELF, Appellant,

v.

MIDWEST ORTHOPEDICS FOOT & ANKLE, P.C., Respondent.

No. WD 68977.

Missouri Court of Appeals, Western District.

Oct. 28, 2008.

Application for Transfer to Supreme Court Denied Dec. 23, 2008.

Application for Transfer Denied Jan. 27, 2009.

Kristi Lynn Kingston, Kansas City, MO, for appellant.

Paul David Seyferth, Kansas City, MO, for respondent.

Before THOMAS NEWTON, C.J., RONALD HOLLIGER and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Appellant Carol Self sued her former employer, Respondent Midwest Orthopedics Foot & Ankle, P.C., claiming that it discriminated against her in violation of the Missouri Human Rights Act ("MHRA"). The circuit court dismissed her suit for failure to state a claim. For the reasons that follow, we reverse and remand.

## I. Facts

Self's Petition alleged the following facts. In August, 2005, she began providing consulting services for Midwest Orthopedics. The following month, Self was hired by Midwest Orthopedics to work full-time as a Coding/Billing Coordinator. Prior to accepting the Coding/Billing Coordinator position, the parties agreed that Self would receive thirty-seven days of paid leave and six days of paid holiday leave, and that after an initial ninety-day period, she could begin working from home as a satellite employee.

In late November 2005 Self learned that she was pregnant, and informed Midwest Orthopedics. Her expected due date was in mid-June 2006. On February 5, 2006, Self's water broke. She was admitted to the hospital the next day for monitoring, and remained hospitalized for five days. Self was discharged from the hospital with instructions to remain on bed rest for three weeks and to take oral antibiotics to prevent infection. With the approval of Midwest Orthopedics, Self began working from home on February 17, 2006.

On February 28, 2006, Self was admitted to a different hospital to be monitored for the duration of her pregnancy. With Midwest Orthopedics' approval, Self continued to work approximately thirty hours per week while she was in the hospital. On April 10, 2006, Self experienced complications and was ordered to remain lying down, which she believed would prevent her from working that day. Self notified her employer. Her condition improved later that day, however, so she was able to work part of April 10, as well as on April 11.

On April 11, 2006, Self received a call from Midwest Orthopedics, and was informed that, due to her billing work, Midwest Orthopedics' revenues were increasing. Nevertheless, at the conclusion of the call Self was told that Midwest Orthopedics had decided to hire someone else to perform her duties, and that her services would no longer be required. In an April 13 letter, Midwest Orthopedics confirmed Self's termination, and stated that her official termination date would be May 1, 2006.

Self's Petition alleged that at the time of her termination she had weeks of unused paid leave, which would have been more than sufficient to cover the two weeks of maternity leave she had agreed to take.

Self gave birth to her daughter on April 26, 2006.

After obtaining a Notice of Right to Sue from the Missouri Commission on Human Rights (the "Commission"), Self filed suit against Midwest Orthopedics in the Circuit Court of Jackson County on January 16, 2007.

In her Petition, Self alleged that her employment was terminated because of her pregnancy, and that Midwest Orthopedics' decision to terminate her was motivated by her sex based upon her pregnancy condition. Self further alleged that Midwest Orthopedics thereby engaged in unlawful employment discrimination.

On February 9, 2007, Midwest Orthopedics moved to dismiss Self's Petition for failure to state a claim, arguing that the MHRA, § 213.055,[1] does not prohibit pregnancy discrimination. On August 24, 2007, the circuit court entered an Order granting Midwest Orthopedics' Motion to Dismiss. The court denied Self's Motion for Reconsideration and entered judgment for Midwest Orthopedics on October 9, 2007. This appeal follows.

---

1. Unless otherwise indicated, all statutory references are to the Revised Statutes of Missouri 2000 and the 2007 Cumulative Supplement.

## II. Analysis

We review the dismissal of a petition for failure to state a claim *de novo,* applying the same standard as the circuit court. *Estate of Clark,* 83 S.W.3d 699, 702 (Mo. App. W.D.2002).

> [A] motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

*Reynolds v. Diamond Foods & Poultry, Inc.,* 79 S.W.3d 907, 909 (Mo. banc 2002).

The only basis on which Midwest Orthopedics moved to dismiss Self's petition, and the only argument it makes in defense of the trial court's Judgment, is that Self "fail[ed] to state a cause of action because the MHRA does not recognize pregnancy discrimination as a cause of action." Midwest Orthopedics asserts no other alleged defect in Self's Petition. Because it stated no basis for its dismissal ruling, we presume the trial court accepted Midwest Orthopedics' argument that discrimination based on pregnancy is not actionable under the MHRA. *Ricketts v. Ricketts,* 113 S.W.3d 255, 257 (Mo.App. W.D.2003).

In her sole Point Relied On, Self argues that the MHRA's prohibition of discrimination on the basis of sex includes discrimination based on an employee's pregnancy, and that the trial court therefore erred in dismissing her claim. We agree.

The parties have ably briefed and argued this case based largely on the assumption that the MHRA's coverage of pregnancy-based discrimination claims is an issue of first impression. To the contrary, we conclude that the Missouri Supreme Court's decision in *Midstate Oil Co. v. Missouri Commission on Human Rights,* 679 S.W.2d 842 (Mo. banc 1984), is controlling, and dispositive of the question presented. In *Midstate Oil,* the Missouri Supreme Court found that sufficient evidence existed to state a prima facie case of discrimination based on a terminated employee's claim that she was discharged because she was pregnant:

> We believe the Commission reasonably could have determined that sufficient evidence was adduced to establish a prima facie case of discrimination. There was evidence that complainant was a member of a class protected by § 296.020.1; that she was discharged; *and that a gender-related trait—pregnancy—was a factor in respondent's decision to discharge her.* This was sufficient to establish an "inference of discrimination."
>
> The burden then shifted to respondent to articulate a legitimate, nondiscriminatory reason for complainant's discharge.

*Id.* at 846 (emphasis added) (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).

Rather than merely "obliquely discuss[ing]" pregnancy discrimination claims as Midwest Orthopedics contends, *Midstate Oil* held that an allegation that an employee's pregnancy was a factor motivating an adverse employment action could establish a prima facie case of discrimination "because of . . . sex."

■ We recognize that *Midstate Oil* ultimately held that, under the burden-shifting paradigm of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),[2] substantial evidence did not exist to support a finding that the employer's non-discriminatory justification for terminating the claimant was pretextual. The Missouri Supreme Court accordingly affirmed the circuit court's judgment in favor of the employer. Nevertheless, the Court expressly stated that the Commission could properly determine that evidence of pregnancy-based discrimination established a prima facie case, and we do not consider ourselves free to disregard that explicit conclusion. While we are not required to follow dictum in Supreme Court opinions, *see, e.g., Husch & Eppenberger, LLC v. Eisenberg*, 213 S.W.3d 124, 132 (Mo.App. E.D.2006), the quoted passage from *Midstate Oil* cannot fairly be characterized in that way. While *Midstate Oil* could simply have assumed without deciding that the Commission had properly held that the claimant had made out a prima facie case, and proceeded to consider the employer's purportedly non-discriminatory justifications for discharging her, that is not what the Court did: to the contrary, it expressly stated that the Commission's finding of a prima facie case was supported by the evidence, and addressed the employer's responsive arguments only after drawing that conclusion. " 'It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter.' " *Union Pac. R.R. Co. v. Mason City & Ft. Dodge R.R. Co.*, 199 U.S. 160, 166, 26 S.Ct. 19, 50 L.Ed. 134 (1905) (citation omitted); *accord, Blair v. Steadley Co.*, 740 S.W.2d 329, 332–33 (Mo.App. S.D.1987) (a "declaration of substantive law . . . relevant to the determination of the case[ ] could not be dictum"); *In re City of Berkeley*, 155 S.W.2d 138, 139–40 (Mo.App.1941) (statement by Missouri Supreme Court that a particular type of order was appealable was not dictum, even though Supreme Court dismissed the appeal because the appellants had no standing to prosecute it).

*Midstate Oil*'s statement that evidence of a pregnancy-based termination decision could establish a prima facie case is significant. A prima facie case cannot exist without an underlying cause of action. *Midstate Oil* cited two United States Supreme Court decisions which make clear that a prima facie case, if unrebutted, is sufficient to support a judgment in a claimant's favor:

> [T]he prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Establishment of the prima facie case in effect creates a presump-

---

**2.** The "basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment" as set forth in *McDonnell Douglas* has been summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employ-

ee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (internal citations, quotation, and footnote omitted).

tion that the employer unlawfully discriminated against the employee. *If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.*

*Burdine,* 450 U.S. at 254, 101 S.Ct. 1089 (quoting *Furnco Constr.,* 438 U.S. at 577, 98 S.Ct. 2943) (emphasis added). Consequently, because *Midstate Oil* recognized that sufficient evidence existed to establish a prima facie case of discrimination based upon a pregnancy-motivated termination decision, it necessarily held that such a claim is cognizable under the MHRA, and can support a judgment in an employee's favor.

Midwest Orthopedics emphasizes that Judge Blackmar, in dissent in *Midstate Oil,* argued that the majority should have stated that pregnancy discrimination is prohibited by the MHRA more "emphatically." However, Judge Blackmar noted that "the principal opinion may not be in disagreement on this basic proposition," and argued only that "the point requires more emphasis." *Midstate Oil,* 679 S.W.2d at 848.[3] Whether the holding in *Midstate Oil* could have been more fully explained is not our concern; we are bound by the majority opinion in *Midstate Oil,* which we interpret to recognize a claim for sex discrimination based on pregnancy under the MHRA.

We recognize that *Midstate Oil* interpreted and applied a predecessor to the MHRA, not the MHRA itself. We do not, however, consider that fact significant. The Fair Employment Practices Act was originally enacted by the Missouri Legislature in 1961. It was amended to prohibit discrimination on the basis of sex in 1965. See § 296.020, RSMo 1967. The provisions of the Fair Employment Practices Act were incorporated into the MHRA upon its enactment in 1986. However, despite this 1986 recodification, the Fair Employment Practices Act's prohibition against employment discrimination "because of the . . . sex . . . of any individual" remained the same, and remains the same today. *Compare* § 296.020, RSMo 1978, *with* § 213.055, RSMo 1986, and § 213.055, RSMo 2000. As a result, the adoption of the MHRA in 1986 does not appear to have effected any material substantive change in Missouri law with respect to employment discrimination based on sex. Despite Midwest Orthopedics' claim that *Midstate Oil* was rendered obsolete by the later enactment of the MHRA, the Missouri Supreme Court recently cited and relied on it, going so far as to characterize *Midstate Oil* as "an MHRA case." *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 818 (Mo. banc 2007); *see also, e.g., Loethen v. Cent. Mo. Urology Clinic, Inc.,* 48 S.W.3d 126, 129, 130–31 (Mo.App. S.D.2001) (following *Midstate Oil* in interpreting MHRA); *McMullin v. McRaven,* 882 S.W.2d 772, 774 (Mo.App. E.D.1994) (same).[4]

---

3. In a later passage, Judge Blackmar assumed that the majority agreed that the employer "engaged in sex discrimination by discharging a female employee whose pregnancy constitutes a substantial factor in the termination," *id.* at 851–52, and complained that, "[i]f it is the purpose of the principal opinion to attack this premise it should do so explicitly." *Id.* at 852.

4. Upon its enactment, a specific definition of "discrimination" was added to the MHRA, see § 213.010(5), while the Fair Employment Practices Act had left the term undefined. If anything, the MHRA's definition of "discrimination" as "any unfair treatment based on . . . sex," § 213.010(5), would appear to bolster *Midstate Oil*'s conclusion that pregnancy-based employment decisions constitute discrimination "because of . . . sex." *See*

Midwest Orthopedics makes much of the fact that in *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), the United States Supreme Court found that an employer's exclusion of pregnancy-related conditions from the insurance benefits it offered employees was not prohibited under the sex-discrimination provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), on which the MHRA is based. Congress responded to *Gilbert* by passing the Pregnancy Discrimination Act ("PDA") in 1978, which explicitly prohibited discrimination "on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Midwest Orthopedics emphasizes that Missouri's sex-discrimination ban remains similarly-worded to the pre-PDA language of Title VII, which *Gilbert* held did not cover pregnancy-based discrimination claims. While that may be the case, this same argument could have been presented to the Missouri Supreme Court in 1984 in *Midstate Oil,* and *Gilbert* therefore cannot constitute the sort of intervening change in law that might permit us to disregard *Midstate Oil*'s plain language. *See Midstate Oil,* 679 S.W.2d at 847–48 n. 1 (Blackmar, J., dissenting) (discussing *Gilbert* and the later enactment of the PDA). We also note that our Supreme Court has recently stated that, while "appellate courts are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law" when interpreting the MHRA, "Missouri's discrimination safeguards under the MHRA, however, are not identical to the federal standards and *can offer greater discrimination protection.*" *Daugherty,* 231 S.W.3d at 818–19 (emphasis added).[5]

In 1992, the General Assembly amended the MHRA to add provisions prohibiting discrimination in housing based on "familial status." See §§ 213.040, 213.045, 213.050. The 1992 amendment specifies that the ban on "familial status" discrimination protects "any person who is pregnant." § 213.010(10)(b). Midwest Orthopedics argues that the MHRA prior to 1992 could not have prohibited pregnancy-based discrimination, or else the quoted language from the 1992 amendments would have been unnecessary. We question whether a 1992 amendment limited to the housing discrimination provisions of the MHRA provides a reliable guide in interpreting employment-discrimination provisions relating to sex which have been in effect, unchanged in any material respect, since 1965. Further, it appears that the 1992 adoption of the definition of "familial status" was intended to conform Missouri's housing discrimination law to the corresponding definitional provision of the federal Housing Act, 42 U.S.C.

*Daugherty,* 231 S.W.3d at 819 (relying on definition of "discrimination" to conclude that a claim is actionable if a protected characteristic "contributed to the unfair treatment," even if not "a substantial or determining factor in an employment decision").

5. While we need not address the issue because we are bound to follow *Midstate Oil,* we note that the highest courts of other States have divided as to whether their sex-discrimination statutes, modeled (like Missouri's) after Title VII as originally enacted, should be read to comprehend pregnancy-based discrimination claims. For example, *compare Narragan-*

*sett Elec. Co. v. R.I. Comm'n for Human Rights,* 118 R.I. 457, 374 A.2d 1022, 1024–25 (1977) (following *Gilbert* ), and *Group Hospitalization, Inc. v. D.C. Comm'n on Human Rights,* 380 A.2d 170, 172–74 (D.C.1977) (same), *with Minn. Mining & Mfg. Co. v. State,* 289 N.W.2d 396, 398–400 (Minn.1979) (rejecting *Gilbert* majority's analysis); *Quaker Oats Co. v. Cedar Rapids Human Rights Comm'n,* 268 N.W.2d 862, 866–67 (Iowa 1978) (same); *Mass. Elec. Co. v. Mass. Comm'n Against Discrimination,* 375 Mass. 160, 375 N.E.2d 1192, 1197–1200 (1978) (same).

§ 3602(k), in order to permit the Commission to enter into "cooperative or work-sharing agreements" with the federal Department of Housing and Urban Development under § 213.030(12). Addressing these same 1992 MHRA amendments, we previously recognized that "[w]hile it is presumed that in enacting a new statute or amending an existing one, the legislature intended to effect some change in the existing law, 'it is also true that the purpose of a change in the statute can be clarification.'" *Mo. Comm'n on Human Rights v. Red Dragon Rest., Inc.*, 991 S.W.2d 161, 167 (Mo.App. W.D.1999) (quoting *Mid-Am. Television Co. v. State Tax Comm'n*, 652 S.W.2d 674, 679 (Mo. banc 1983)). Following *Red Dragon*, we conclude that "the legislature amended [§ 213.010(10)(b)] to clarify a cause of action for [pregnancy-based] discrimination and not to effect a substantive change in the law." 991 S.W.2d at 167.

Significantly, we are not alone in our reading of *Midstate Oil.* Both the Eastern and Southern Districts have recognized that a discharge based on pregnancy is actionable under the MHRA. *See Loethen v. Cent. Mo. Urology Clinic, Inc.,* 48 S.W.3d 126, 131 (Mo.App. S.D.2001)

(employee filed suit against employer alleging that she was fired because she was pregnant; although recognizing that plaintiff "made a foundation for her case by putting forth evidence supporting her contention that she had been discriminated against on the basis of her pregnancy," and was therefore not subject to an award of costs, ultimately affirming trial court's judgment for employer based on evidence of other, non-discriminatory reasons for termination); *McMullin v. McRaven,* 882 S.W.2d 772, 774 (Mo.App. E.D.1994) (although ultimately affirming judgment in favor of employer because employee failed to prove that employer's reasons for discharge were pretextual, court stated that "[w]e find employee established a prima facie case of unlawful pregnancy discrimination [under Title VII and the MHRA]. Her testimony, if believed, was sufficient to support her claim."). A leading commentary treats the issue as non-controversial, observing matter-of-factly: "On the basis that such conduct constitutes sex discrimination, *Missouri law also prohibits discrimination against a person because of pregnancy.*"[6] The Missouri Commission on Human Rights,[7] and federal courts applying Missouri law,[8] agree.

---

**6.** 37 Martucci, William C., MISSOURI PRACTICE SERIES: EMPLOYMENT LAW AND PRACTICE § 4.9, at 114 (2007–08 ed.) (emphasis added; citing *Loethen,* 48 S.W.3d 126).

**7.** The Commission is charged with the duty "[t]o seek to eliminate and prevent discrimination because of … sex," § 213.030.1(1), and "[t]o adopt, promulgate, amend, and rescind suitable rules and regulations to carry out the provisions of [the MHRA]." § 213.030.1(6). Its regulations have expressly recognized the MHRA's prohibition of pregnancy discrimination since 1973. *See* 8 C.S.R. 60–3.040(16) ("A written or unwritten employment policy or practice which excludes from employment applicants or employees because of pregnancy is in prima facie violation of Chapter 213, RSMo (1986) and may be justified only upon showing of

business necessity."). This regulation was previously codified at 4 C.S.R. 180.3.040, effective November 10, 1973.

**8.** *Vogan v. U.S. Oncology, Inc.,* 301 F.Supp.2d 1038, 1039 (W.D.Mo.2003) (denying summary judgment on plaintiff's claim that employer "terminated her employment because of her pregnancy in violation of the Pregnancy Discrimination Act ("PDA") amendments to Title VII, 42 U.S.C. § 2000e, and the Missouri Human Rights Act"); *Snyder v. Yellow Transp., Inc.,* 321 F.Supp.2d 1127, 1130–31 (E.D.Mo. 2004) ("Applied in this case, Snyder must establish a prima facie case of pregnancy discrimination"; finding that the "prima facie case [wa]s undisputed," and denying summary judgment on Title VII and MHRA claims due to existence of disputed material

### III. Conclusion

Self's Petition alleged that she "was a member of a class protected by § [213.055]; that she was discharged; and that a gender-related trait—pregnancy— was a factor in respondent's decision to discharge her." *Midstate Oil,* 679 S.W.2d at 846. She accordingly stated an actionable claim under the MHRA, and the circuit court erred in dismissing it. The judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

All concur.

facts related to employer's allegedly non-discriminatory motive for employment decision). We acknowledge that—without analysis— these decisions treat pregnancy-discrimination claims under Title VII and the MHRA as equivalent, despite the material difference in the wording of the federal and state statutes we have described in the text. We nevertheless believe these decisions provide *some* additional support for the conclusion we reach.