Anthony Rex Gabbert, Judge
The Missouri State Department of Social Services, Children's Division, and Brian Kinkade, in his official capacity, (Children's Division collectively) appeal the circuit court's judgment removing Ann Barr's name from Missouri's Child Abuse and Neglect Central Registry and awarding Barr attorney fees and costs.[1] The Children's Division asserts four points on appeal contending the circuit court: 1) erred in finding the Children's Division failed to prove by a preponderance of the evidence Barr neglected C.M., 2) erroneously applied Section 210.152.5[2] in finding the Children's Division's decision was arbitrary, capricous, unreasonable, and an abuse of discretion, 3) erred in awarding attorney fees to Barr, and 4) abused its discretion in refusing the Children's Division's Motion to Continue. We affirm.
Factual and Procedural Information
The evidence, in the light most favorable to the circuit court's judgment, was that prior to June 2014, Barr lived in Pennsylvania with her daughter, C.M., who was under the age of eighteen.[3] Other members of the home included C.M.'s step-father, Wade Barr, and step-brother, Gage Barr.[4] At some point prior to June 2014, C.M. told a friend at school that she had been sexually abused by Gage. The record contains no details regarding the abuse *687 allegations. The friend's father called Wade, who in turn informed Barr. Barr spoke with C.M. about the allegations; she provided Barr very few details. Barr testified that she was told the abuse had occurred on one occasion. Barr spoke with Gage and advised that it was to never happen again. Barr testified that after becoming aware of the situation, C.M. was never left alone with Gage. If Barr went somewhere, C.M. would go with her; at night, C.M. slept with Barr. Barr could not recall how long she and C.M. continued to reside in the home, but Barr ultimately separated from and divorced Wade due to Gage's abuse of C.M.
After separating from Wade and moving C.M. from the home, Barr spoke with C.M.'s biological father and the two jointly decided C.M. would reside with him. C.M.'s father lived in Alaska. C.M. moved to Alaska in June 2014 and resided there for three to four months. She and her father then moved to Missouri. Barr testified at trial that her relationship with C.M.'s father was "tenuous" and that she sometimes had difficulty obtaining information from him. When Barr discussed Gage's abuse of C.M. with C.M.'s father, he requested Barr not report it because he wanted to assess C.M.'s mental state and make sure C.M. was ready to talk about it. While in Alaska, C.M.'s father did not seek counseling for C.M. or report the abuse. Upon moving to Missouri, C.M.'s father took C.M. to a psychiatrist. The abuse was then reported to the Children's Division.
Barr received a telephone call from someone with the Children's Division. The call lasted approximately five minutes. Barr was asked if she was aware of the sexual abuse perpetrated against C.M. by Gage. Barr acknowledged that she was. Barr admitted that C.M. had been sexually abused by Gage and that Barr was responsible for C.M.'s care, custody and control at the time of the incident. She denied, however, that she failed to provide proper care or supervision for C.M. Barr asked advice regarding what to do and if she should report the matter to the police. Barr testified that she was never asked when she last took C.M. to the doctor, but it was alleged she had not taken C.M. to the doctor for seven years. Barr testified that C.M.'s immunizations were all current, she took C.M. to the doctor when she was ill, and she took her at least yearly because the school required physicals for C.M.'s participation in sports. Barr also took C.M. for dental visits and introduced into evidence a March 31, 2014, document showing C.M. getting braces put on her teeth. It was also alleged that Barr failed to address C.M.'s school needs. Barr testified that C.M. struggled some in school and Barr met with the school "all the time" to address C.M.'s needs. She introduced into evidence an Individual Education Plan that had been formulated for C.M. while C.M. was in Barr's care. Barr testified that after the Children's Division investigation commenced, C.M.'s father terminated C.M.'s counseling. Barr provided C.M.'s father with Barr's insurance information so that C.M. could continue in counseling.
When Barr became aware of the Children's Division's investigation, she went to the Pennsylvania police department and reported the abuse. Gage was ultimately prosecuted. The Pennsylvania Department of Human Services investigated and found C.M. had been abused, but did not name Barr as a perpetrator or allege Barr failed to protect C.M.[5] On November 25, 2014, Barr received a letter from the Missouri Department of Social Services notifying Barr of the Children's Division's finding *688 that Barr neglected C.M. by failing to supervise her. Barr sought review of the Children's Division decision. On July 28, 2015, the Children's Division's Child Abuse and Neglect Review Board (CANRB) upheld the neglect finding. Because of the neglect finding, Barr's name was placed on the Children's Division's Central Child Abuse and Neglect Registry (Central Registry).
Barr filed a Petition for De Novo Judicial Review pursuant to Section 210.152 alleging the decision of the CANRB was unsupported by a preponderance of the evidence. She requested the decision be reversed and Barr's name removed from the Central Registry. On April 25, 2017, a "counsel status hearing" was scheduled for May 22, 2017. On May 22, 2017, the counsel status hearing took place. The court's docket entry on that date states: "Cause set 8/8/17 at 9:00 am for hearing." An entry dated May 23, 2017 states: "Hearing Scheduled." "Scheduled For: 08/08/2017 09:00 AM."
On August 8, 2017, Barr appeared for trial represented by counsel; the Children's Division appeared by counsel. The Children's Division moved for a continuance contending it was unaware the matter was set for trial. Counsel for the Children's Division stated that, due to turnover in their office, counsel was led to believe the hearing was only a status hearing and not trial. Consequently, the Children's Division had no witnesses available. Barr's counsel opposed the continuance due to Barr traveling from Pennsylvania for the purpose of resolving the matter and because docket entries stated it was set for hearing. The court denied the Children's Division's motion.
The Children's Division presented no evidence. Barr testified on her own behalf and the State attempted to prove its case through cross-examination of Barr.
On August 25, 2017, the circuit court entered an order finding, among other things, that the Children's Division failed to prove by a preponderance of the evidence that Barr abused or neglected C.M. The court ordered Barr's name removed from the Central Registry and ordered the Children's Division pay Barr's $3,000 attorney's fees and costs. This appeal follows.
Point I - Neglect Finding
The Children's Division's contends in its first point on appeal that the circuit court erroneously concluded that the Children's Division failed to prove by a preponderance of the evidence Barr neglected C.M. The Children's Division argues that this finding is against the weight of the evidence because Barr failed to provide proper and necessary support for C.M. after discovering C.M. had been sexually abused.
"When the determination of the CANRB is challenged and the alleged perpetrator seeks de novo judicial review in the circuit court, that court conducts a fresh hearing on the matter and is not limited in any way by the previous decision of the Division or the CANRB." Petet v. State, Dept. of Social Services, Div. of Family Services , 32 S.W.3d 818, 821 (Mo. App. 2000). In that hearing, the alleged perpetrator is allowed a full hearing on all issues. Id. Although this appeal hearing is, in theory, an appeal of an administrative hearing, it is conducted as an original proceeding. Id. "A circuit court must independently determine whether a preponderance of the evidence shows that the alleged abuse or neglect occurred." Jamison v. State, Dept. of Social Services, Div. of Family Services , 218 S.W.3d 399, 416 (Mo. banc 2007). "[B]ecause Section 210.152.5 specifically provides for de novo judicial *689 review, a trial court must base its decision on the evidence presented in the trial court and not merely review the record before the CANRB." Id. at 415. Our review is of the decision of the circuit court and we give no consideration to prior conclusions of the Children's Division. Petet , 32 S.W.3d at 821-22.
We will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or erroneously applies the law. Id. at 822. We review conflicting evidence in the light most favorable to the circuit court's judgment and defer to the circuit court's credibility determinations. Bowers v. Bowers , 543 S.W.3d 608, 613 (Mo. banc 2018). When the evidence poses two reasonable but different inferences, we defer to the circuit court's assessment of the evidence. Id.
A claim that the trial court's judgment is against the weight of the evidence presupposes there is sufficient evidence to support the judgment and effectively weighs how much persuasive value evidence has. Such a challenge serves only to check the trial court's potential to abuse its power in weighing the evidence. An appellate court approaches such arguments cautiously and reverses only in rare instances when it has a firm belief the trial court's judgment is wrong.
Holm v. Wells Fargo Home Mortgage, Inc. , 514 S.W.3d 590, 596 (Mo. banc 2017).
Neglect is defined in Section 210.110 (12) as the "failure to provide, by those responsible for the care, custody, and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for the child's well-being."
After discovering the abuse, the record shows that Barr ensured Gage had no private access to C.M. Due to the abuse, Barr separated herself and C.M. from the home where Gage remained. She also divorced Gage's father. C.M. has had no contact with Gage since moving. Barr notified C.M.'s father about the abuse. C.M.'s father and Barr jointly determined that C.M.'s mental state should be assessed before reporting the abuse and making the abuse public; Barr and C.M.'s father also determined that it would be in C.M.'s best interest to live with C.M.'s father. After learning the abuse had been reported in Missouri, Barr contacted authorities in Pennsylvania and Gage was prosecuted. With regard to additional allegations of neglect noted at trial, including that Barr failed to take C.M. to the doctor and failed to address school needs when C.M. lived with Barr, Barr presented evidence to the contrary.
Although the Children's Division argues Barr failed to provide proper and necessary support for C.M. after the sexual abuse came to light, there was no evidence at trial of C.M.'s specific needs at the time the abuse was discovered and how Barr may have failed to meet those needs. No experts or anyone else testified that Barr failed to meet C.M.'s needs or that Barr failed to protect C.M. after she learned of the abuse. The Children's Division argues that "there is evidence that negates a great portion" of Barr's evidence that she protected C.M. after learning of the abuse. The Children's Division contends Barr could have moved C.M. out of the perpetrator's home sooner, might not have actually kept Gage away from C.M. after learning of the abuse, could have notified authorities sooner, and could have taken C.M. to a medical doctor or counselor after learning of the abuse. Yet, these suggestions are speculative inferences in the light least favorable to the court's judgment.
*690 There was simply no evidence of exactly how long Barr remained in the perpetrator's home after learning of the abuse; she was out of the home three months prior to C.M. moving to Alaska, but Barr could not recall how long they remained in the perpetrator's home after Barr learned of the abuse. There was no evidence Gage abused C.M. after Barr learned of the abuse. There was no evidence Barr knew of the abuse prior to when she claimed she learned of the abuse. There was no evidence, expert or otherwise, that Barr failed to adequately supervise or protect C.M. either before or after learning of the abuse.
The Children's Division suggests the court erroneously considered Barr's intent, arguing " 'intent' and 'neglect' are mutually exclusive and the fact that one may not have intended to neglect their children cannot preclude a finding that they did neglect them and did allow conditions to develop through neglect that could lead to abuse." There was nothing improper about the court weighing Barr's intent with the totality of the evidence.
In evaluating conduct toward a child for alleged neglect ... neglect normally focuses on physical deprivation of harm and the issue turns on intent, which generally is an inferred fact, determined by conduct. But, while subjective intent may be considered ... it is not a required element. In determining from the totality of the circumstances whether neglect has occurred, therefore, the trial court may consider, but is not bound by, the subjective intent of the alleged perpetrator. This consideration of subjective intent in a neglect determination distinguishes it from a negligence determination that only considers objective intent.
Sercl v. Director, Department of Social Services, Children's Division of State , 477 S.W.3d 85, 89 (Mo. App. 2015) (internal quotation marks and citations omitted).
Notably, the Children's Division had the burden of proof in this matter. Sercl , 477 S.W.3d at 88. It had the burden of production and burden of persuasion. Krispy Kreme Doughnut Corporation v. Director of Revenue , 488 S.W.3d 62, 67 (Mo. banc 2016). The Children's Division put on no evidence. Barr, as the party without the burden of proof, had no obligation to offer any evidence. Sercl , 477 S.W.3d at 88. Given that the Children's Division offered no evidence on a matter it carried the burden of proof, for that reason alone the court was justified in finding the Children's Division failed to prove Barr neglected C.M. See White v. Dir. of Revenue , 321 S.W.3d 298, 305 (Mo. banc 2010) ("When the burden of proof is placed on a party for a claim that is denied, the trier of fact has the right to believe or disbelieve that party's uncontradicted or uncontroverted evidence" and "generally, the party not having the burden of proof on an issue need not offer any evidence concerning it.") (internal quotation marks and citations omitted).
The court's judgment was not against the weight of the evidence. A preponderance of the evidence supported the court's conclusion that Barr did not fail to provide for C.M.'s care, custody, control, support, education, nutrition, medical, surgical, or any other care necessary for the C.M.'s well-being.
Point one is denied.
Point II - Application of Section 210.152.5
The Children's Division contends in its second point on appeal that the court erroneously applied Section 210.152.5. The Children's Division argues the circuit court failed to apply the proper standard of de *691 novo review required by Section 210.152.5 as evidenced by the court finding the Children's Division's decision to be arbitrary, capricious, unreasonable, and an abuse of discretion, as well as in making other related findings. We find no error.
The court's judgment specifically finds: "The Children's Division failed to prove by a preponderance of the evidence that the Petitioner abused or neglected the child" or that "any actions by Petitioner rose to the level of abuse and neglect." The court's judgment reflects that the court understood the burden of proof under Section 210.152 - production and persuasion - to be with the Children's Division and concluded the Children's Division had not met its burden. Barr introduced evidence the Children's Division improperly handled the investigation to support her claim she had not neglected C.M., her request for removal from the Central Registry, and for an award of reasonable attorney's fees and costs. The court's inclusion of additional findings in its judgment does not negate its neglect findings or prove the court failed to conduct de novo review. Given the state of the law requiring unusual or special circumstances for recovery of attorney's fees,[6] it was arguably necessary for the court to include additional findings in its judgment to support its award of attorney fees and costs to Barr.
Point two is denied.
Point III - Attorney Fees
In its third point on appeal, the Children's Division contends the circuit court erred as a matter of law in awarding attorney's fees to Barr. The Children's Division argues there is no statutory authority to assess Barr's attorney's fees to the Children's Division, and contends there is no recognized exception applicable.
Generally, with regard to awards of attorney's fees and costs, Missouri courts adhere to the 'American Rule,' which provides that each litigant should bear his or her own expenses. Exceptions, however, are made where the fees are permitted by statute or contract, where very unusual circumstances exist so it may be said equity demands a balance of benefits, or where the fees result from an individual being involved in collateral litigation. In addition, an exception has been recognized in special circumstances where a party's conduct is frivolous, without substantial legal grounds, reckless or punitive.
Goines v. Missouri Dep't of Soc. Servs., Family Support & Children's Div. , 364 S.W.3d 684, 687-88 (Mo. App. 2012).
It is well settled that there is no statutory basis for granting attorney fees in cases such as Barr's. See Id. ; Birdsong v. Children's Div., Missouri Dep't of Soc. Servs. , 461 S.W.3d 454, 460 (Mo. App. 2015). Hence, for recovery of fees an unusual circumstance demanding equity must be shown, or a special circumstance showing conduct that was frivolous, reckless, punitive, or without substantial legal grounds must be present. Id. Here, as relevant to these issues, the circuit court made the following findings:
1) DSS placed Petitioner on the Child Abuse and Neglect Central Registry based upon its finding of an abuse and/or neglect by a preponderance of the evidence by Petitioner although Children's Division failed to fully investigate this incident and failed to do so in a timely matter.
*692 2) DSS's final decision and order is arbitrary, capricious and unreasonable; an abuse of discretion, and is unsupported by substantial and competent evidence upon the whole record.
3) DSS's placement of Petitioner on the Child Abuse and Neglect Central Registry on the grounds that the Missouri Children's Division investigator had made a finding of abuse or neglect by a prepondernace of the evidence is arbitrary, capricious and unreasonable; an abuse of discretion; and unsupported by substantial and competent evidence upon the whole record.
4) The Children's Division failed to prove by a preponderance of evidence that the Petitioner abused or neglected the child.
5) The Children's Division investigation failed to be conducted in accordance with the Children's Division policies including, but not limited to, those failures as set forth above. (Judgment lists various allegations by Petitioner of Children's Division's investigative failures.)
The Children's Division makes no argument that these findings do not support unusual circumstances demanding equity, or reckless conduct or conduct without substantial legal grounds. The Children's Division makes no claim that these findings by the court were unsupported by substantial evidence, or even against the weight of the evidence. The only claim the Children's Division makes with regard to these findings is that, in making these findings the court misunderstood it was conducting de novo review. Although objecting to Barr's prayer for attorney's fees and costs in its answer to Barr's petition for de novo judicial review, the Children's Division was thereafter silent on the issue.[7]
Given the circuit court's unchallenged findings regarding the Children's Division's conduct in this case, we cannot conclude that unusual or special circumstances were not present in this case justifying an award of attorney's fees.
The Children's Division's third point on appeal is denied.
Point IV - Motion for Continuance
In its fourth point on appeal, the Children's Division contends the circuit court abused its discretion in refusing to grant the Children's Division's Motion to Continue. The Children's Division argues the record proves abuse of discretion because the court was confused about what standards to apply, the court reached the wrong result, and the Children's Division was unable to meaningfully participate in the trial. The Children's Division contends *693 that the "record is clear that counsel simply and in good faith believed that the court had set the matter for a status hearing rather than trial."
"The decision to grant or deny a continuance is largely within the trial court's discretion." Taylor v. Republic Automotive Parts, Inc. , 950 S.W.2d 318, 322 (Mo. App. 1997). The denial of a continuance is rarely reversible error, but the trial court does not enjoy absolute or arbitrary discretion." Id.
Children's Division's counsel asked for a continuance at trial, stating a belief that a status hearing, and not trial, had been set for that date. Barr's counsel protested, indicating that Barr had traveled from Pennsylvania to attend trial and that the docket sheet, as reflected on Case.net, stated the matter was set for hearing. Barr's counsel stated the Children's Division had asked for available trial dates and Barr's counsel provided those; the Children's Division said it would set the matter for trial and that Barr's counsel need not be present for that setting.
The docket entries are clear that on April 25, 2017, a counsel status hearing was scheduled for May 22, 2017. On May 22, 2017, that status hearing was held. Following that hearing the court documented: "Cause set 8/8/17 at 9:00 am for hearing." Another entry was made May 23, 2017: "Hearing Scheduled ... Scheduled for: 08/08/2017". It appears from the docket entries that, when a status hearing was scheduled it was denominated as such. The August 8, 2017 hearing was not so denominated. Counsel representing Children's Division at trial entered her appearance on June 14, 2017. Given that the hearing was scheduled for August 8, 2017, Children's Division counsel had ample opportunity to investigate and confirm the nature of the hearing if there was any confusion. Although the Children's Division suggests that, because no discovery had been completed and no request for a guardian ad litem had been filed trial was premature, Barr filed her initial petition March 29, 2016. The Children's Division had nearly a year and a half to pursue those things prior to trial and had not done so.
We find no abuse of discretion in the court's refusal to grant the Children's Division's motion to continue.
Point four is denied.
Conclusion
We conclude that the circuit court: 1) did not err in finding the Children's Division failed to prove by a preponderance of the evidence Barr neglected C.M., 2) did not misapply Section 210.152.5, 3) did not err in awarding attorney fees to Barr, and 4) did not abuse its discretion in refusing the Children's Division's Motion to Continue.
We affirm the circuit court's judgment.
All concur.

Barr filed no Respondent's brief on appeal.

All statutory references are to the Revised Statutes of Missouri as supplemented through 2014, unless otherwise stated.

The record does not indicate C.M.'s exact age.

As Wade Barr and Gage Barr have the same last name as Ann Barr, they will be referenced by their first names. No disrespect or familiarity is intended.

A letter from Pennsylvania Human Services was received by Barr in May 2015.

See Goines v. Missouri Dep't of Soc. Servs., Family Support & Children's Div. , 364 S.W.3d 684, 687-88 (Mo. App. 2012) ; Birdsong v. Children's Div., Missouri Dep't of Soc. Servs. , 461 S.W.3d 454, 462 (Mo. App. 2015).

The Children's Division did not include the issue of attorney fees in its motion for new trial. Rule 78.07(b) (effective July 1, 2017) does not require inclusion in such motion "if the matter was previously presented to the trial court. " (Emphasis added). We are not convinced the Children's Division's Answer to Barr's Petition preserved this issue for appeal as the arguments now made were never presented to the trial court. In light of evidence at trial that arguably justified an award of attorney fees, this issue should have been raised in the Children's Division's motion for new trial. To the extent it was waived, we review ex gratia. See also Brown v. Brown , 423 S.W.3d 784, 788 n.5 (Mo. banc 2014)
(While Rule 78.07(b) states that, in a court-tried case, 'neither a motion for a new trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review,' Father cannot rely on this rule to excuse him from responsibility for failing to preserve his claim that Ms. Hendrix failed to present substantial evidence to support the fee judgment. An issue must be presented to the trial court to be preserved for appeal.).