Teresa LOETHEN, Appellant,

v.

**CENTRAL MISSOURI UROLOGY CLINIC, INC., Respondent.**

No. 23905.

Missouri Court of Appeals, Southern District, Division Two.

June 28, 2001.

Frank E. Wallemann, Jon E. Beetem, P.C., Jefferson City, for Appellant.

Dan L. Birdsong, Thomas, Birdsong, Becker & Mills, P.C., Rolla, for Respondent.

BARNEY, Judge.

Teresa Loethen, ("Appellant") appeals from the judgment of the Circuit Court of Phelps County in favor of Central Missouri Urology Clinic, Inc., ("the Clinic"), following a bench trial arising from Appellant's claim that she was unlawfully discharged from her employment because she was pregnant. Appellant raises two points of trial court error.

In her first point Appellant asserts that the trial court's judgment is against the weight of the evidence and erroneously applies the law. In her second point she alleges that the trial court erred in ordering Appellant to pay court costs and other miscellaneous expenses, contrary to sec-

tion 213.111, because sufficient evidence was presented at trial to show a foundation for the suit.[1]

Viewed in a light most favorable to the judgment of the trial court, the record shows that Appellant was hired in November of 1996 by Dr. Shaw P. Wan ("Dr. Wan"), president of the Clinic, to work as a medical transcriptionist. Appellant was paid a salary of $1,400.00 per month. She was also granted personal vacation days and medical health coverage. There was no provision in her "Agreement of Employment" covering pregnancy leave. Appellant worked for Dr. Wan and one other doctor, Dr. Kaczmarek, under the supervision of Judy Wilmont, the office manager of the Clinic.

In June of 1997, Appellant learned she was pregnant and informed Ms. Wilmont and Dr. Wan. Appellant's husband was in the United States Army and she was authorized the use of military health facilities. Appellant began using the military hospital in Fort Leonard Wood, Missouri, approximately 40 minutes away from the Clinic, for her prenatal care. Her doctor's appointments were often in the daytime, during her regular working hours. She was allowed to make these appointments during work hours and her pay was never docked for these absences.

Appellant was concerned about using her personal vacation days to make these appointments, thereby leaving her without days to take off for maternity leave after the birth of her child. While Appellant's "Agreement of Employment" with the Clinic did not include paid maternity leave, Dr. Wan permitted Appellant to borrow vacation time from the personal leave time she was expected to accumulate during the following year. Dr. Wan also offered to purchase a laptop computer so that Appel-

lant could work at home for a few weeks following delivery of her baby.

On January 25, 1998, Appellant approached Dr. Wan about contracting out his transcription work to Appellant so as to allow her to work solely at home. Dr. Wan told Appellant that he desired to keep the work at the office, out of concern for patient confidentiality. No agreement between the two was ever reached. The next day, January 26, 1998, Dr. Wan was informed by Ms. Wilmont that Appellant had informed her "that she wants to leave [sic] end of January, which was Friday, January 31st." Dr. Wan acted surprised, but told Ms. Wilmont, "if she wants to do that, go ahead. Just give me a letter of resignation." The record also shows that on the afternoon of January 26, 1998, Appellant went to a doctor's appointment.

The following morning, January 27, 1998, Dr. Wan was informed by Ms. Wilmont that Appellant had asked if that day, Tuesday, could be her last day at work, instead of January 31, 1998. Dr. Wan responded that he preferred that Appellant remain at work until the end of the week, as contemplated, because there was transcription work to be done. Dr. Wan never spoke directly with Appellant regarding when she desired to leave, but received all of his information from Ms. Wilmont. Later that afternoon, another employee, Amanda Allen, discovered confidential documents in a manila file folder on Appellant's desk. It contained a copy of corporate minutes from a special board meeting of the Clinic and a copy of the Clinic's disciplinary policy. The documents were then shown to Ms. Wilmont. She, in turn, advised Dr. Wan of this and asked him if she could tell Appellant to turn in her key and leave. He responded affirmatively and Ms. Wilmont advised Appellant to leave

1. All statutory references are to RSMo. 2000, unless otherwise noted.

the office. Ms. Allen then assumed some of Appellant's duties. Later, while using the computer previously assigned to Appellant, Ms. Allen also discovered that some documents, known as macros—pre-prepared forms used at the Clinic—were missing.

Several days after being asked to leave, Appellant requested a service letter and requested the reason for her discharge. Ms. Wilmont drafted a letter, approved by Dr. Wan, which stated that Appellant was discharged for attempting "to remove corporate papers from [the] corporate office without permission, by placing same papers inside a corporate manila file folder, inside her personal Daily Planner. Leaving work without permission [on the] dates of December 31, 1997[,] and January 26, 1998. Work habits were inadequate for the previous three months."

Appellant filed suit against the Clinic alleging that she was fired because she was pregnant and her discharge amounted to an unlawful discriminatory practice. In due course, the matter came up for a bench trial and the trial court determined that there was a legitimate, non-pretextual, and nondiscriminatory reason for Appellant's discharge, because "she was copying and accumulating confidential forms and corporate documents for the purpose of taking them from the offices of Defendant." This appeal followed.

The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *H.S. v. Board of Regents, Southeast Missouri State University,* 967 S.W.2d 665, 668 (Mo.App.1998); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "The Court must uphold the judgment of the trial court under any reasonable theory pleaded and supported by the evidence." *H.S.,* 967 S.W.2d at 668. All evidence and inferences therefrom are viewed in a light most favorable to the prevailing party, while all contrary evidence is disregarded. *Id.*

Appellant argues that the trial court erred in ordering "that Plaintiff take nothing by this suit" because the judgment was against the weight of the evidence and erroneously applied the law, in that "the evidence presented herein established both direct and indirect evidence of discrimination in violation of Chapter 213, RSMo 2000."

■ In these types of cases, federal courts have set out "a system of 'burden shifting' to unearth the relevant facts." *Midstate Oil Co. v. Missouri Comm'n on Human Rights,* 679 S.W.2d 842, 845 (Mo. banc 1984); see also *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In this analysis, the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *Midstate Oil Co.,* 679 S.W.2d at 845. Once this has been shown, the "burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its conduct." *Id.* If and when the employer expresses a non-discriminatory reason for his or her conduct, the burden shifts back to the plaintiff to prove that said reasons offered by the employer are pretextual. *Id.*

■ Appellant argues that the reason for her discharge was related to her gender because of her pregnancy and refers this Court to evidence showing that Ms. Wilmont had made several negative comments about her being pregnant, and lied to both Appellant and Dr. Wan in order to have Appellant discharged. Appellant testified that Ms. Wilmont had informed her on January 26, 1998, that Dr. Wan would let Appellant work at home if she submitted a letter of resignation at the end of that week. Appellant denied that she informed

Ms. Wilmont that she desired to quit at the end of the week or make the day she was ultimately discharged her last day. Appellant admitted that there were some documents of a confidential nature on her desk, but denied that she ever intended to take the documents out of the office. Appellant further argues that because Ms. Wilmont did not testify and refute Appellant's testimony, her evidence remained undisputed.

However, evidence contradicting Appellant's testimony was presented in the form of testimony from Dr. Wan and Laura Nigl, another employee of the clinic. Dr. Wan testified that Ms. Wilmont had advised him on January 26, 1998, that Appellant desired to stop working at the end of that week. Ms. Nigl testified that, at some time prior to January, Appellant had stated to her that she did not want to work but wanted to be a stay-at-home mother. Ms. Wilmont was not called as a witness by either party.

■ Where the evidence presented is conflicting, the trial court has the freedom to evaluate and determine the credibility of the witnesses and may accept or reject all, part, or none of their testimony. *H.S.*, 967 S.W.2d at 671. "Such deference is not limited to the issue of credibility of witnesses, but also includes the conclusions of the trial court." *Id.* "A trial court is accorded wide discretion even if there is evidence which would support a different result." *Id.* Reviewing the record in a light favorable to the judgment, as we must, we do not find error in the trial court's ruling. Sufficient evidence was presented by the Clinic regarding Dr. Wan's non-discriminatory reasons for discharging Appellant based on Appellant's accumulating, copy-

ing and attempting to remove confidential office materials from the Clinic office. Point denied.

Appellant argues in her second point that the trial court erred in ordering Appellant to pay the Clinic court costs of $560.05 and other miscellaneous suit expenses in the amount of $198.96. She argues that such an order was contrary to the provisions of § 213.111 because awards of such costs and expenses were preconditioned upon a showing that the "case is without foundation, and in this case [Appellant] produced sufficient evidence to show a foundation for this suit."[2]

■ As best we can determine, this issue appears not to have been addressed by our state courts; however, we may refer to federal decisions interpreting similar civil rights law. *Missouri Comm'n on Human Rights v. Red Dragon Rest., Inc.*, 991 S.W.2d 161, 168 (Mo.App.1999). In an 8th Circuit Court of Appeals decision, the court stated that "this Circuit has been unwilling to award attorneys' fees where the defendant is unable to prove that the plaintiff's case is meritless." *Marquart v. Lodge 837*, 26 F.3d 842, 851 (8th Cir.1994). A prevailing defendant must show, at the very least, that a plaintiff's case is frivolous, unreasonable, or groundless. *Id.* "The imposition of sanctions is a serious matter and should be approached with circumspection." *Bass v. Southwestern Bell Telephone, Inc.*, 817 F.2d 44, 47 (8th Cir.1987) (quoting *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir.1987)). In determining whether a plaintiff's claim is without foundation, a trial court must not engage in post hoc reasoning by concluding that plaintiff's action was unreasonable

---

**2.** The relevant portion of section 213.111 reads: "a prevailing respondent may be awarded court costs and reasonable attorney fees only upon a showing that the case is without foundation." Section 213.111.2. We note that the trial court incorrectly premised its award of costs and miscellaneous expenses on the basis of section 213.055.2.

or without foundation because plaintiff did not prevail at trial. *Id.*

■ Our review of the record indicates that Appellant made a foundation for her case by putting forth evidence supporting her contention that she had been discriminated against on the basis of her pregnancy. Indeed, the service letter issued by the Clinic referring to her work habits being "inadequate for the past three months," coincides with the period of time that she was in her pregnancy, yet little, if any, evidence in the record supported this statement. Our review of the facts of the case convinces us that it was not totally devoid of any foundation, nor was it frivolously filed. Point Two is sustained.

That portion of the judgment assessing court costs and miscellaneous expenses against Appellant pursuant to Chapter 213 is reversed. In all other respects the judgment is affirmed.

GARRISON, J., concurs.

RAHMEYER, J., concurs.