

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **MONA BRUMMETT,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD82092** |
| | ) | |
| **v.** | ) | **OPINION FILED:** |
| | ) | **December 24, 2019** |
| **BURBERRY LIMITED,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable David M. Byrn, Judge

Before Division One:  Edward R. Ardini, Jr., Presiding Judge, Mark D. Pfeiffer, Judge
and Cynthia L. Martin, Judge

Mona Brummett ("Brummett") appeals from the trial court's entry of judgment in favor of Burberry Limited ("Burberry") on her claims of religious discrimination and retaliation.  Brummett complains that the trial court committed reversible error in its evidentiary rulings, in prohibiting Brummett from commenting on the absence of witnesses during closing argument, and in assessing costs against her.  We affirm in part, and reverse and modify the judgment in part.

## Factual and Procedural History[1]

In late 2014, Brummett began working for Burberry as a service lead and key holder in the company's Kansas City, Missouri retail store ("store").  Brummett's responsibilities included interacting with customers and making sales, as well as training other sales staff and opening and closing the store.  During the first year of her tenure at the store, Brummett became friends with the store's general manager, Karli DeCastro ("DeCastro"), and the two women and their families socialized outside of work.  On October 4, 2015, Brummett texted a photograph of a positive home pregnancy test to DeCastro.

Katy Cox ("Cox"), the store's assistant general manager, told DeCastro that she wanted to transfer to the store's shipper/receiver position in October 2015.  DeCastro announced Cox's decision to the store's staff.  Brummett expressed her interest in the assistant general manager position to DeCastro.  At the time, DeCastro believed that Brummett had potential to assume a larger leadership role in the store.

On November 13, 2015, Lynne Miller ("Miller"), one of the store's sales associates, was working in the store when she learned of a terrorist attack in Paris, France.  Miller testified at trial that, upon learning of the news, she commented that there was a "radical terrorist attack," and that Hexi Wang ("Wang") (another Burberry employee) admonished "you can't say that."  Wang's recollection of Miller's comments was different.  Wang

---

[1]"On appeal in a jury-tried case, we review the evidence and reasonable inferences therefrom in a light most favorable to the jury's verdict, disregarding evidence to the contrary." *Jones v. City of Kansas City*, 569 S.W.3d 42, 47 n.2 (Mo. App. W.D. 2019) (quoting *Dubinsky v. U.S. Elevator Corp.*, 22 S.W.3d 747, 749 (Mo. App. E.D. 2000)).

2

testified that Miller said, "The Muslims are terrorists. They killed all the people." Wang reported Miller's comments to DeCastro.

DeCastro met with Miller and told her that any statements generalizing a religion could be offensive to others and are "dangerous and potentially hurtful." According to DeCastro, Miller apologized and stated that she did not intend to offend anyone. DeCastro testified that she did not believe Miller intended the comment to be hurtful or malicious. DeCastro also testified that she never personally heard Miller make any derogatory comments about Muslims.

Brummett, a Muslim, did not personally hear Miller's comments. However, after Brummett heard of Miller's comments from another employee, Brummett complained to DeCastro. DeCastro told Brummett that she had spoken to Miller. In addition, DeCastro issued a directive to the store's staff not to discuss politics and religion while in the store. Brummett testified that Miller nonetheless continued to make comments about politics and religion. Brummett testified that she continued to complain to DeCastro, but that DeCastro told Brummett to "just ignore her."

In late 2015, Brummett made numerous comments to her co-workers to the effect that she was considering terminating her pregnancy because she did not want her child to experience the same kind of discrimination that she endured as a Muslim woman. While at work on December 8, 2015, Brummett had an emotional breakdown. Brummett cried uncontrollably in the store's restroom for more than two hours. DeCastro unsuccessfully attempted to comfort Brummett. Brummett's husband had to be called to retrieve her.

3

Following this incident, Brummett worked for a portion of December and was approved for a medical leave of absence due to depression and anxiety from December 28, 2015, through the end of January 2016. Brummett's job during this extended leave was protected by the Family Medical Leave Act.[2] Brummett returned to work on February 1, 2016, as a service lead.

Brummett submitted an application to be the store's assistant general manager on the day she returned to work. However, Cox had changed her mind about transferring to the store's shipper/receiver position and remained the store's assistant general manager. After learning of Cox's decision, Brummett expressed anger to DeCastro about not being promoted to assistant general manager. Brummett also told DeCastro that Miller was continuing to talk about politics and Muslims while in the store.

On February 11, 2016, Brummett asked DeCastro for the phone number for Burberry's corporate human resources department. Brummett wanted a copy of the incident report that DeCastro told Brummett she had filed, and wanted to make the corporate office aware of her version of the events in November and December 2015. Brummett spoke by phone with Carlos Rodriguez ("Rodriguez"), Burberry's senior manager of employee services, that same day. Throughout February and March 2016, Brummett contacted Burberry's corporate human resources department several times, sending multiple lengthy emails and having multiple telephone conversations lasting at least one hour each. During these emails and conversations, Brummett described her

---

[2] 29 U.S.C. section 2601 *et seq.*

complaints with management and her concerns about how she had been treated by her coworkers and by management. In particular, Brummett complained that Miller told Wang that "all Muslims are terrorists" and that Cox had been coerced into remaining the store's assistant general manager in order to prevent Brummett from being promoted to the position. Brummett also voiced concerns about her work schedule and requests for leave.

In March 2016, Kareem Gayle ("Gayle"), Burberry's corporate human resources manager, traveled to Kansas City to investigate the circumstances surrounding Brummett's complaints. While in Kansas City, Gayle interviewed a number of Burberry employees who worked at the store, including Wang, Miller, Cox, and DeCastro. Wang told Gayle that, on November 13, 2015, Miller announced to Wang that "there [was] a bombing and Muslims bombed Paris," and that he admonished Miller, saying that "you can use the terms radicals or extremists but to say Muslims isn't correct," before he spoke to DeCastro about the matter. When Gayle interviewed Miller, her memory of her comments on November 13, 2015, was substantially the same as Wang's. Miller told Gayle that she said "Muslim[] radicals bombed Paris." None of the employees with whom Gayle spoke indicated that derogatory or discriminatory comments were an ongoing, chronic problem in the store.

Gayle sent Brummett a letter summarizing her investigation's findings on April 11, 2016. The letter stated that Gayle was "unable to substantiate [Brummett's] allegations" that Miller stated that "all Muslims are terrorists," and also stated that Cox's decision to continue in her role as the assistant general manager "was purely a personal decision that she was in no manner coerced or pressured by [Burberry] to make."

5

In late May 2016, Brummett fell in the store and sustained an injury to her foot. Brummett began workers' compensation leave and had a baby later in the summer.[3]

In June 2016, while Brummett was on leave, Cox was promoted to general manager of the store after DeCastro resigned. Brummett applied for the store's assistant general manager position. Burberry ultimately hired Abby Lamone ("Lamone") for the position. Rodriguez testified that Burberry hired Lamone because her experience as a manager was superior to that of the other applicants.

Brummett timely filed charges of discrimination with the Missouri Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC"). The MHRC issued Brummett right-to-sue letters on August 19, 2016, and on April 28, 2017.

Brummett filed a petition for damages ("initial petition") against Burberry, DeCastro, and Cox[4] on November 16, 2016. The trial court granted Brummett leave to file a first amended petition ("first amended petition") on June 16, 2017. The first amended petition named Burberry, DeCastro, Cox, and Lamone as defendants (collectively "the defendants"), and alleged several counts, including claims seeking relief under the Missouri Human Rights Act[5] ("MHRA"): (1) religious harassment and discrimination

---

[3]Brummett was released to return to work with no restrictions in February 2018. Because Burberry would have had to retrain Brummett in order for her to return to the sales floor, Burberry did not return to work before the store closed permanently the next month.

[4]Brummett's initial petition also named Frank DeCastro, DeCastro's father, as a defendant, alleging that Brummett had a therapist-patient relationship. On May 2, 2017, Brummett and Frank DeCastro filed a joint stipulation to dismiss Brummett's claims against Frank DeCastro with prejudice.

[5]Section 213.010 *et seq.* Brummett's claims accrued between November 2015 and August 2016. No statutory amendments pertinent to this appeal took place between those months. Thus, all statutory references are to RSMo 2000 as amended through August 2016 unless otherwise expressly noted.

6

against the defendants; (2) national origin harassment and discrimination against the defendants; (3) sex discrimination against Burberry, DeCastro, and Cox; (4) retaliation against the defendants; (5) aiding and abetting against the defendants; (6) disability and perceived disability discrimination against Burberry, Cox, and Lamone; and (7) workers' compensation retaliation against Burberry. On May 1, 2018, Brummett and the defendants filed a joint stipulation to dismiss Brummett's claims against DeCastro, Cox, and Lamone with prejudice, leaving Burberry as the only remaining defendant.

During a pretrial conference, Brummett's counsel confirmed that Brummett would only be proceeding to trial on counts one and four, religious discrimination and retaliation, and that all other counts were being dismissed. The trial court granted Brummett's motion to bifurcate the trial, such that liability and punitive damages would be separately tried. In addition, the trial court entertained and ruled the parties' motions *in limine*.

Brummett's claims of religious discrimination and retaliation against Burberry were tried to a jury over four days, beginning on May 9, 2018. Less than two hours after it retired, the jury entered verdicts in favor of Burberry on Brummett's claims. The trial court entered a judgment ("Judgment") on May 22, 2018, in accordance with the jury's verdicts. The Judgment assessed costs against Brummett.

Brummett filed a timely motion for new trial, or in the alternative, to amend the Judgment ("post-trial motion"). Brummett's post-trial motion asserted that the trial court committed error in its evidentiary rulings and in prohibiting Brummett from commenting on the absence of certain witnesses during closing argument. The post-trial motion also argued that the trial court committed error in assessing costs against Brummett because the

7

applicable version of the MHRA did not permit such an award unless her claims were without foundation. The trial court denied the post-trial motion.

Brummett filed this timely appeal. Additional facts are discussed as necessary to address Brummett's points on appeal.

## Standard of Review

Brummett's seven points on appeal concern the trial court's evidentiary rulings, the trial court's restriction on the scope of closing argument, and the trial court's assessment of costs. Brummett's first six points on appeal are reviewed for an abuse of discretion. *See NorthStar Educ. Fin., Inc. v. Scroggie*, 581 S.W.3d 641, 644 (Mo. App. W.D. 2019) ("We review a trial court's decisions admitting or excluding evidence for an abuse of discretion."); *Gleason v. Bendix Commercial Vehicle Sys., LLC*, 452 S.W.3d 158, 178 (Mo. App. W.D. 2014) ("We review the trial court's ruling in closing argument for an abuse of discretion."). A trial court abuses its discretion when its ruling "is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *NorthStar Educ. Fin., Inc.*, 581 S.W.3d at 644 (quoting *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 114 (Mo. banc 2015)).

Brummett's seventh point on appeal challenges the trial court's statutory authority to assess costs against her, and argues that an amendment to the statute authorizing an award of costs was unlawfully applied in violation of Missouri's constitutional prohibition against statutes retrospective in their operation. Whether the retrospective application of a statutory amendment violates the Missouri constitution is an issue of law we review *de*

8

*novo*. *Wellner v. Dir. of Revenue*, 16 S.W.3d 352, 354 (Mo. App. W.D. 2000) (addressing the retrospective application of an amendment to a civil statute and holding that a trial court's erroneous declaration or application of the law is given no deference).

## Analysis

Brummett's seven points on appeal are discussed separately.

### *Point One: Relevance of Evidence of Brummett's Prior Abortion*

Brummett's first point on appeal asserts that the trial court abused its discretion in permitting Burberry to introduce evidence about an abortion which predated Brummett's employment with Burberry because the evidence was neither logically nor legally relevant. Before trial, the trial court sustained Brummett's motion *in limine* to exclude this evidence, though the trial court advised it would reassess its ruling based on the evidence presented at trial.[6]

During direct examination, Brummett repeatedly testified that she contemplated terminating her 2015 pregnancy due to the extreme severity of Burberry's discriminatory and retaliatory actions. Brummett was cross-examined by Burberry on this same topic without objection. Burberry then requested a bench conference and argued that evidence of Brummett's prior abortion was relevant to challenge Brummett's claim that she considered terminating her 2015 pregnancy because of Burberry's extreme discriminatory treatment. The trial court noted that approximately twenty different references had been made by Brummett during her testimony connecting Burberry's discrimination and

___

[6]The trial court was not required to include the caveat that its ruling could change depending on the evidence presented at trial because a ruling on a motion *in limine* is, in and of itself, interlocutory and subject to change during the course of trial. *Beverly v. Hudak*, 545 S.W.3d 864, 875 (Mo. App. W.D. 2018).

9

retaliation to Brummett's contemplation of an abortion in 2015. As a result, the trial court concluded that Burberry should be permitted to question Brummett about her prior abortion.

Brummett argues that evidence of her prior abortion was neither logically nor legally relevant. "To be admissible, evidence must be both logically relevant and legally relevant." *Kerr v. Mo. Veterans Comm'n*, 537 S.W.3d 865, 876 (Mo. App. W.D. 2017) (quoting *Frazier v. City of Kansas City*, 467 S.W.3d 327, 338 (Mo. App. W.D. 2015)). "Evidence is logically relevant if it make[s] the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* (quoting *Frazier*, 467 S.W.3d at 338). Legal relevance is a distinct concept. It refers to "the balance between the probative value and the prejudicial effect of the evidence." *Id.* (quoting *Frazier*, 467 S.W.3d at 338). "That balancing requires the trial court to weigh the probative value, or usefulness, of the evidence against its costs, specifically the dangers of unfair prejudice, confusion of the issues, undue delay, misleading the jury, waste of time, or needless presentation of cumulative evidence." *Id.* (quoting *Frazier*, 467 S.W.3d at 338). If the prejudicial effect of the evidence outweighs its probative value, then the evidence is not relevant and should be excluded. *Id.*

Brummett argues that by allowing Burberry to introduce evidence of Brummett's prior abortion, the trial court allowed Burberry "to inject a highly prejudicial topic into the trial" without any discussion as to the evidence's relative probative value.[7] [Appellant's

---

[7]Brummett also asserts that "Burberry did not even ask Brummett the reason why she had a prior abortion." [Appellant's Brief, p. 21] In doing so, Brummett inconsistently claims that the trial court erred in allowing Burberry to ask about the prior abortion and in not requiring Burberry to explore the topic more fully. In addition to these

10

Brief, p. 21]  Brummett argues that evidence of her prior abortion could only have been probative if it had been shown to have caused, in part, the emotional distress Brummett claimed she suffered from Burberry's discriminatory conduct.  [Appellant's Brief, p. 23] Brummett's view of the logical relevance of the evidence of her prior abortion is too narrow given the circumstances in this case.

Brummett repeatedly testified that the discrimination and retaliation she experienced while employed at Burberry was so extreme that she contemplated aborting her 2015 pregnancy.  Burberry argues, and we agree, that evidence of Brummett's prior abortion was logically relevant to "demonstrate[] to the jury that factors other than [Burberry's] alleged treatment of [Brummett] played a role in [Brummett's] willingness to consider ending her pregnancy" and "placed into context [Brummett's] claims that her desire to have an abortion was evidence of extreme mental distress."  [Respondent's Brief, p. 17]  We cannot say that the trial court abused its discretion in concluding that evidence of Brummett's prior abortion was logically relevant to an issue in dispute.  That is particularly so given the restricted cross-examination conducted on the topic by Burberry. Burberry asked very few questions of Brummett to establish only the prior abortion pre-dated Brummett's employment with Burberry, and was a choice that had not been based on claimed discriminatory treatment.

Nor can we say that it was an abuse of discretion to conclude that the probative value of this evidence was not outweighed by its prejudicial effect.  Courts have long

---

arguments being incongruent, Brummett's argument ignores that her counsel had the opportunity to ask questions during redirect in order to clarify the circumstances surrounding the prior abortion.  She chose not to.

11

acknowledged that the topic of abortion sharply divides Americans, with "virtually irreconcilable points of view" on each side of the debate, so that the risk of prejudice from admitting evidence on the subject is great. *Stenberg v. Carhart*, 530 U.S. 914, 920-21 (2000). But, in this case, the subject of abortion was first introduced by Brummett to underscore the alleged severity of Burberry's discriminatory conduct. The trial court did not abuse its discretion to permit logically relevant cross-examination to challenge Brummett's contention that she contemplated aborting her 2015 pregnancy because of the severity of Burberry's discrimination.

Point One is denied.

### Point Two: Exclusion of Evidence of Miller's Derogatory Comments About Race

Brummett's second point on appeal complains that the trial court abused its discretion in excluding evidence of Miller's derogatory comments about race because the evidence was logically and legally relevant. The argument portion of Brummett's brief clarifies that Brummett is complaining about the exclusion of testimony from Wang and Maria Graham ("Graham") on two occasions during trial: (i) when both witnesses were testifying during Brummett's case-in-chief; and (ii) after Burberry allegedly opened the door to the excluded testimony during Burberry's cross-examination of Brummett. We address these occasions separately.

Prior to trial, the trial court sustained Burberry's motion *in limine* to exclude evidence of derogatory statements made by Burberry employees about members of protected classes to which Brummett does not belong, including African Americans and Hispanics. The trial court noted, however, that it would not exclude such evidence if shown

12

to directly relate to Burberry's investigation of Brummett's claims of discrimination, as the evidence would then be relevant to provide context.

During Brummett's case-in-chief, at the conclusion of Wang's direct examination testimony, Brummett asked to make an offer of proof regarding Wang's knowledge of Miller's derogatory comments involving race. Wang testified during the offer of proof that he heard Miller make derogatory comments about African Americans and Hispanics at least three to four times a week during his nearly two-year tenure at the store, and that he heard Miller make these comments in front of Cox. At the conclusion of the offer of proof, Brummett argued that Wang's testimony should be permitted to demonstrate Burberry's failure to comply with its discrimination policy and Burberry's failure to train management employees about how to respond to violations of the policy. Brummett also expressed a concern that should Burberry ask Miller during its case-in-chief about any comments she made in violation of Burberry's discrimination policy, Wang would no longer be available to rebut Miller's testimony. Brummett did not argue that Wang's offer of proof testimony was directly related to Burberry's investigation of Brummett's claims of discrimination, or that the testimony was relevant to provide context to Burberry's investigation of Brummett's claims.

The trial court denied the offer of proof, explaining that because Miller's derogatory comments about race were not directly at issue in the instant case, the evidence was more prejudicial than probative, and was therefore not legally relevant.[8] The trial court noted,

---

[8]The trial court additionally noted that, because the parties agreed to bifurcate the trial, the evidence could be admissible during the damages portion of the trial to determine whether punitive damages would be appropriate.

13

however, that if Burberry opened the door to such evidence, the trial court would reconsider its ruling, and would have the option to force Burberry to bear the cost of returning Wang to testify.

Brummett made a second offer of proof at the conclusion of Graham's direct examination testimony. Graham, a Burberry sales associate who worked at the store with Brummett, testified that she heard Miller make derogatory comments about race on several occasions, and that Cox was present on at least one of the occasions. Graham testified that Miller made comments about "African Americans and Hispanics being people responsible for theft in the store." At the conclusion of the offer of proof, Brummett made the same arguments as were made after Wang's offer of proof. The trial court denied the offer of proof on the same basis as its exclusion of Wang's offer of proof.

Brummett's point relied on argues that the exclusion of these offers of proof was an abuse of discretion because Miller's derogatory comments about race were logically and legally relevant. However, the argument portion of Brummett's brief addresses only the logical relevance of the excluded evidence. The argument portion of Brummett's brief does not address the legal relevance of the excluded evidence. "Arguments raised in the points relied on that are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." *Southside Ventures, LLC v. La Crosse Lumber Co.*, 574 S.W.3d 771, 783 (Mo. App. W.D. 2019) (quoting *Wright v. Barr,* 62 S.W.3d 509, 528 (Mo. App. W.D. 2001)); *see also Kerr*, 537 S.W.3d at 877 (recognizing that, in order to sufficiently preserve a claim of evidentiary error on appeal, the appellant must, among other requirements, provide sufficient argument on the point in its brief).

14

Brummett's omission is of particular import here, as the trial court expressly excluded both of her offers of proof on the basis of *legal* relevance, noting that because Miller's derogatory statements about race were not related to Brummett's claims of discrimination, their probative value was outweighed by their prejudicial effect. Brummett's failure to demonstrate that this stated basis for excluding the offer of proof evidence was erroneous is fatal to her point on appeal. *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012); *City of Peculiar v. Hunt Martin Materials, LLC*, 274 S.W.3d 588, 591 (Mo. App. W.D. 2009). The trial court has not been shown to have abused its discretion in excluding the evidence adduced by Brummett's offers of proof.

Brummett made a second attempt to admit Wang's and Graham's excluded offer of proof testimony following Burberry's cross-examination of her. During that cross-examination, Burberry admitted Exhibit 375, a copy of Brummett's first supplemental interrogatory responses, into evidence. Burberry then displayed Exhibit 375 on a screen and directed the jury's attention to Brummett's answer to interrogatory number 14. That interrogatory asked Brummett to detail "each and every instance in which Lynn Miller made 'offensive comments about people of the Muslim religion and people who originate from the Middle East.'" The responsive portions of Brummett's answer to interrogatory number 14 were read aloud to the jury. A non-responsive portion of Brummett's interrogatory answer was not read aloud to the jury. The non-responsive portion of Brummett's interrogatory answer stated "Even after my reports, [Miller] continued to make racist comments regarding African American[s] and Hispanics."

15

After her cross-examination was complete, Brummett asked the trial court to revisit its ruling about the admissibility of Wang's and Graham's excluded testimony. Brummett argued that by publishing the entirety of Brummett's answer to interrogatory number 14 on a screen, Burberry opened the door to evidence about Miller's derogatory comments about race. The trial court once again ruled that the testimony adduced through Brummett's offers of proof was not admissible. The trial court did agree, however, that Burberry's publication of the entirety of the answer to interrogatory number 14 had opened the door to permitting Brummett to explain the portion of her answer addressing Miller's derogatory race comments. As a result, on redirect examination, Brummett was permitted to testify about her personal knowledge of disparaging comments Miller had made about African Americans and Hispanics.

Brummett argues on appeal that the trial court abused its discretion in limiting her rebuttal to the door opened by Burberry, and that she should have been allowed to present Wang's and Graham's testimony about Miller's disparaging race comments to corroborate her own testimony on the subject. "When a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible." *Curl v. BNSF Ry. Co.*, 526 S.W.3d 215, 226 (Mo. App. W.D. 2017) (quoting *Howard v. City of Kansas City*, 332 S.W.3d 772, 785 (Mo. App W.D. 2011)). Such a rule exists "to prevent a party from eliciting evidence to his favor and then objecting and preventing his opponent from cross-examining and inquiring further into that evidence." *Id.* However, the scope of the rebuttal evidence is within the trial court's discretion, and that discretion will be given deference on appeal. *Hootselle v. Mo. Dep't of Corr.*, No. WD82229, 2019 WL 4935933, at *5 n.7 (Mo. App.

16

W.D. Oct. 8, 2019) ("The admissibility and scope of rebuttal evidence is within the discretion of the trial court, and, 'absent an abuse of that discretion, we will not reverse the trial court's decision.'" (quoting *Aliff v. Cody*, 26 S.W.3d 309, 315 (Mo. App. W.D. 2000)).

Here, the trial court concluded that while Burberry opened the door to evidence of Miller's derogatory comments about race, it did so only with respect to Brummett's knowledge of such comments--the subject of her interrogatory response. As such, we cannot say that the trial court abused its discretion in commensurately limiting Brummett's rebuttal.

Point Two is denied.

### Point Three: Excluding Evidence of DeCastro's Comments About Miller's Age

Brummett's third point on appeal argues that the trial court "abused its discretion in excluding evidence of a management-level employee's age-related comments regarding [Miller], even after the door to such evidence was opened by Burberry, in that such evidence was logically and legally relevant to Brummett's claims." [Appellant's Brief, p. 32]

Prior to trial, Burberry filed a motion *in limine* to exclude evidence of statements made regarding any Burberry employee's age. Brummett contested the motion *in limine* because she wanted to admit evidence that DeCastro called Miller a "nutty old woman" and did not believe that her comment violated Burberry's discrimination policy. Burberry argued that DeCastro's comment about Miller was not logically or legally relevant because it was made in the context of calming Brummett's reaction to Miller's alleged comments about Muslims, and because the testimony was not related to Brummett's claims of

17

religious discrimination and retaliation and would only serve to confuse the issues in the case. The trial court sustained the motion *in limine*.

Brummett made no effort to admit evidence regarding DeCastro's comment during her direct examination of DeCastro.[9] However, after Burberry completed its cross-examination of DeCastro, Brummett asked the trial court to revisit its *in limine* ruling. During cross-examination, DeCastro testified that she had been given a final warning by Burberry for inappropriate communications with a subordinate after Brummett gave corporate headquarters copies of text messages between DeCastro and Brummett. The written final warning was not introduced during DeCastro's cross-examination, though DeCastro did provide generalized testimony about the basis for the warning. Brummett argued that DeCastro's testimony about receiving a final warning opened the door to discussion of the content of the final warning, which included reference to a text message from DeCastro that referred to Miller and said "Just relax. She's a nutty old woman, don't let her."[10] After reviewing the written final warning *in camera*, the trial court concluded that DeCastro's general testimony about receiving a final warning did not open the door to the admission of DeCastro's text message to Brummett calling Miller a "nutty old woman."

---

[9]Brummett's Brief generally argues that the trial court's decision to exclude DeCastro's comment about Miller's age was erroneous. However, the trial court's decision to exclude the comment was interlocutory, in response to Burberry's motion *in limine*. A trial court's interlocutory ruling about the admissibility of evidence is not subject to appellate review. *Hancock v. Shook*, 100 S.W.3d 786, 802 (Mo. banc 2003) ("A motion in limine, by itself, preserves nothing for appeal.").

[10]Typically, to preserve a claim of trial court error with respect to the exclusion of evidence, the proponent of that evidence must both attempt to present the evidence at trial and then make an offer of proof if that evidence remains excluded. *Payne v. Fiesta Corp.*, 543 S.W.3d 109, 122 (Mo. App. E.D. 2018). While Brummett did not make an offer of proof, the trial court's on the record *in camera* review of a document marked Exhibit 10 from DeCastro's deposition clarified that the documented included reference to DeCastro's comment about Miller being a "nutty old woman." It is clear from the record that Brummett was seeking to inquire of DeCastro about DeCastro's comment, and we are able to determine from the record whether the trial court's exclusion of that evidence was proper. *See Porter v. City of St. Louis*, 552 S.W.3d 166, 172 (Mo. App. E.D. 2018).

The trial court reiterated its *in limine* ruling that DeCastro's comment had no "specific relevance" to the issues in the case.

Brummett's point on appeal argues that it was error to exclude DeCastro's comment about Miller's age because Burberry opened the door to this logically and legally relevant evidence. The relevance of this excluded evidence is immaterial, however, unless we find that the trial court abused its discretion in concluding that DeCastro's general testimony about receiving a final warning from Burberry did not open the door to discussion of specific content in the final warning letter. Though Brummett's point on appeal alleges that Burberry opened this door, the argument portion of her Brief summarily repeats, but does not develop this contention, preserving nothing for our review. *See Southside Ventures*, 574 S.W.3d at 783; *Kerr*, 537 S.W.3d at 877 (recognizing that, in order to sufficiently preserve a claim of evidentiary error on appeal, the appellant must, among other requirements, provide sufficient argument on the point in its brief).

Even were we to conclude that DeCastro's general testimony opened the door to some discussion about the content of her final warning letter, we would not find that the trial court abused its discretion in excluding testimony about DeCastro's comment calling Miller a "nutty old woman." Though Brummett's point on appeal claims this excluded evidence was logically and legally relevant, the argument portion of Brummett's brief addresses only the logical relevance of the evidence, and ignores the legal relevance of the evidence, an equally plausible basis for the trial court's ruling. Brummett's failure to develop any argument regarding the legal relevance of DeCastro's comment about Miller's age waives the claim of error to this effect raised in her point on appeal. *See Southside*

19

*Ventures*, 574 S.W.3d at 783; *Kerr*, 537 S.W.3d at 877. And Brummett's failure to address legal relevance, a plausible basis for the trial court's ruling excluding the evidence, is fatal to her point on appeal. *See STRCUE, Inc.*, 386 S.W.3d at 219; *City of Peculiar*, 274 S.W.3d at 591.

Point Three is denied.

### Point Four: Testimony by Burberry's Corporate Representative

Brummett's fourth point on appeal argues that the trial court abused its discretion in permitting Burberry's corporate representative, Rodriguez, to testify at trial. When Burberry called Rodriguez as a witness during its case-in-chief, Brummett objected to any testimony Rodriguez might provide about Burberry's decision not to promote Brummett to assistant general manager, arguing that Rodriguez did not have personal knowledge of the subject and that his testimony would therefore be hearsay. The trial court overruled Brummett's objection and permitted Brummett a continuing objection. Among other things, Rodriguez thereafter testified about Burberry's decision not to promote Brummett to assistant general manager. Brummett cross-examined Rodriguez on this subject, highlighting that the testimony was not based on Rodriguez's personal knowledge, and was instead based on a review of corporate records.

Brummett argues that the trial court abused its discretion in allowing Rodriguez to testify as Burberry's corporate representative at trial with respect to the decision not to promote Brummett. Brummett relies on federal case law which holds that although Federal Rules of Civil Procedure Rule 30(b)(6) permits the designation of a corporate representative for purposes of providing deposition testimony on specified topics, trial

testimony by corporate representatives must be based on personal knowledge pursuant to Federal Rule of Evidence 602. Brummett argues that when a corporate representative attempts to testify at trial from corporate records, and not based on personal knowledge, the testimony is hearsay.

Brummett concedes that federal precedent is not binding on our construction of Missouri's Rules of Civil Procedure. *Joel Bianco Kawasaki Plus v. Meramec Valley Bank*, 81 S.W.3d 528, 533 (Mo. banc 2002). And, of course, Missouri does not have codified rules of evidence. The resolution of Brummett's point on appeal is controlled, therefore, by Missouri authority. We addressed the very issue raised by Brummett in *Lunceford v. Houghtlin*, 326 S.W.3d 53 (Mo. App. W.D. 2010).

In *Lunceford*, the defendants in a personal injury suit appealed from a judgment which concluded that a written release between the plaintiffs and an insurance company did not bar the plaintiffs' suit against the defendants. *Id.* at 60-61. Among the issues on appeal was the defendants' argument that the trial court improperly relied on the testimony of two insurance company employees who were not designated as corporate representatives and who had no personal knowledge of the release negotiations. *Id.* at 71. We held that even though the insurance company employees had not been officially designated as corporate representatives, "[c]orporate employees are free to testify within the scope and course of their employment concerning matters within the scope and course of their employment." *Id.* at 73. We further held that even though neither employee participated in the settlement discussions related to the release, "both had reviewed the company's file relating to the settlement; both had familiarity with relevant company practices and

21

procedures; and both were positioned, based upon the scope and course of their employment duties, to advise their view of the company's intent at the time of the [r]elease." *Id.* As such, any "complaints about the extent of these witnesses' 'personal knowledge' of the [r]elease, not having participated in its preparation, went to the weight to be afforded their testimony and not to its admissibility." *Id.*

Unlike the insurance company employees in *Lunceford*, Rodriguez *was* designated as Burberry's corporate representative pursuant to Rule 57.03(b)(4).[11] In fact, Brummett relied on that corporate representative designation to take Rodriguez's deposition. And during her case-in-chief, Brummett admitted Rodriguez's deposition testimony about Burberry's discrimination policy and about Brummett's claim of discrimination. At trial, Rodriguez testified that he was Burberry's senior manager of employee services, a job that included managing the human resources work in Burberry locations throughout the country. Consistent with his pre-trial deposition testimony, Rodriguez testified at trial without objection about Brummett's complaints of discrimination and the company's investigation of those complaints. In addition, Rodriguez testified over Brummett's objection that he was aware that Brummett had applied for the assistant general manager job in June 2016, and about the company's interview and consideration of Brummett as a candidate for the position. Burberry's hiring practices, and its consideration of Brummett's application, were matters within the scope of Rodriguez's knowledge and understanding as a corporate representative. *See Payne v. Cornhusker Motor Lines, Inc.*, 177 S.W.3d 820,

---

[11]All rule references are to Missouri Supreme Court Rules (2017), unless otherwise noted.

22

838-39 (Mo. App. E.D. 2005) (concluding that conclusions by a trucking company's corporate representative were within the scope of the representative's knowledge and understanding even though he did not personally conduct the investigation or make determinations regarding the cause of the accident).[12]  As such, Rodriguez's lack of personal knowledge about Burberry's consideration of Brummett's application went to the weight of Rodriguez's testimony, not to its admissibility.  *See Lunceford*, 326 S.W.3d at 73.  Consistent with this fact, Brummett cross-examined Rodriguez to underscore that his testimony was based on a review of corporate documents, and not his personal knowledge.

The trial court did not abuse its discretion in allowing Rodriguez to testify as Burberry's corporate representative on the subject of Burberry's decision not to hire Brummett as an assistant general manager.

Point Four is denied.

### Point Five: Refusal to Allow Brummett to Comment on the Absence of Witnesses

Brummett's fifth point on appeal asserts that the trial court abused its discretion in prohibiting Brummett from commenting on the absence of Burberry employees as witnesses at trial because those witnesses were not equally available to Brummett.

At trial, Brummett read the following interrogatory and Burberry's response to the jury during her case-in-chief:

---

[12]The circumstances in this case are distinguishable from those in *Ford v. Ford Motor Company*, 585 S.W.3d 317, 327-29 (Mo. App. W.D. 2019), where we affirmed a trial court's refusal to permit a corporate representative to testify when the representative had not been identified in response to an interrogatory question seeking the identification of all persons with factual knowledge about a particular matter.  A trial court's broad discretion to exclude testimony based on nondisclosures during discovery has no bearing on the scope of testimony that can be properly elicited through a corporate representative at trial.

23

Please identify the person or persons who made the final decision to select the individual to the position of assistant general manager to which plaintiff applied.

. . . .

Following individuals collectively made the decision to offer the [assistant general manager] position to Ms. Lamone. Katy Cox, Veronica Pena, Scott Jacobs.

During closing argument, while discussing Burberry's refusal to promote Brummett, Brummett stated "by the way, we didn't hear from Mr. Jacobs, we didn't hear from Ms. Pena . . . ." Burberry objected, and argued that Brummett's argument violated the trial court's pre-trial ruling on a motion *in limine* which had prohibited comment on witnesses not called to testify where equally available to the parties. The trial court sustained Burberry's objection.

Generally, the trial court has broad latitude in controlling closing arguments about the evidence presented at trial and inferences drawn from that evidence. *Peterson v. Progressive Contractors, Inc.*, 399 S.W.3d 850, 856 (Mo. App. W.D. 2013). "When counsel for one side undertakes to comment on the failure of his opponent to call a witness, however, review has been stricter." *Morrissey v. Morrissey*, 935 S.W.2d 715, 718 (Mo. App. E.D. 1996). It is reversible error for a trial court "to allow reference in closing argument to a party's failure to produce a witness equally available to both parties." *Campise v. Borcherding*, 224 S.W.3d 91, 94 (Mo. App. E.D. 2007) (citing *Kelly by Kelly v. Jackson*, 798 S.W.2d 699, 701 (Mo. banc 1990)).

Our Supreme Court has rejected the contention that a witness is not equally available to both parties due to an employment relationship. *Simpson v. Johnson's Amoco Food*

24

*Shop, Inc.*, 36 S.W.3d 775, 778 (Mo. App. E.D. 2001) (citing *Leehy v. Supreme Express & Transfer Co.*, 646 S.W.2d 786, 790-91 (Mo. banc 1983)). Instead, the factors considered in determining the "equal availability" of a witness include:

> (1) one party's superior means of knowledge of the existence and identity of the witness; (2) the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case; and (3) the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation and make it natural that he would be expected to testify in favor of the one party against the other.

*Campise*, 224 S.W.3d at 94 (quoting *Kelly by Kelly*, 798 S.W.2d at 701).

Brummett fails to acknowledge, address, or apply this settled standard for determining whether witnesses are equally available. Instead, she argues that the trial court abused its discretion in refusing to allow her to comment on Burberry's failure to call Scott Jacobs ("Jacobs") and Veronica Pena ("Pena") as witnesses because these individuals where not equally available to her as they still worked for Burberry at the time of trial. Brummett also argues that because Jacobs still worked for Burberry, "it would be expected that he would provide testimony helpful to Burberry in justifying the selection of someone other than Brummett." [Appellant's Brief, p. 45]

Brummett's first argument ignores that a witness's employment relationship with a party is insufficient to render the witness not equally available. *Leehy*, 646 S.W.2d at 790-91. Regardless, Burberry's interrogatory answers alerted Brummett before trial that Jacobs and Pena were two of the three persons involved in the decision not to promote Brummett to assistant general manager. Yet, nothing in the record suggests that Brummett attempted to take Jacobs's or Pena's depositions, or to otherwise engage in discovery to determine

25

Jacobs's or Pena's knowledge about the decision not to promote her. *See Simpson*, 36 S.W.3d at 778 (refusing to conclude that the defendant's employees were not equally available to both parties when the employees were disclosed to the plaintiff in discovery and both parties were aware of their existence).

Brummett's second argument, which suggests that Jacobs was unavailable because his testimony would have benefitted Burberry, is inconsistent with the rationale she argued at trial. At trial, Brummett argued that the jury should be permitted to draw the adverse inference that Burberry failed to call Jacobs and Pena as witnesses because their testimony would have countered Rodriguez's, and would therefore have been favorable to Brummett. In fact, such a showing is relevant to the third prong of the "equally available" test, which refers to whether an absent witness would have provided testimony helpful to the party noting his absence, not the reverse.

The trial court did not err in prohibiting Brummett from commenting on the absence of Jacobs and Pena as witnesses during her closing argument.

Point Five is denied.

### *Point Six: Cumulative Error*

Brummett's sixth point on appeal argues that the cumulative effect of the trial court's evidentiary errors deprived her of a fair trial, citing the errors alleged in her first five points on appeal. "Although a 'new trial can be ordered due to cumulative error, even without deciding whether any single point would constitute grounds for reversal,' '[a]ny number of non-errors cannot add up to an error.'" *City of Kansas City v. Powell*, 451 S.W.3d 724, 743 (Mo. App. W.D. 2014) (citation omitted) (quoting *DeLaporte v. Robey Bldg. Supply, Inc.*,

26

812 S.W.2d 526, 536 (Mo. App. E.D.1991); *Nelson v. Waxman*, 9 S.W.3d 601, 608 (Mo. banc 2000)). Brummett's first five points on appeal are without merit. There is no cumulative error.

Point Six is denied.

### Point Seven: Judgment's Assessment of Costs

Brummett's seventh point on appeal argues that the trial court committed error in entering a Judgment which assessed costs against her. Brummett argues that the trial court applied an amended version of the MHRA to award costs in violation of Missouri's constitutional prohibition against laws retrospective in their operation. Both parties agree that in assessing costs against Brummett, the trial court retrospectively applied the version of section 213.111.2 which took effect on August 28, 2017, though Brummett's discrimination claims were based on actions that occurred between November 2015 and August 2016, and her lawsuit was filed before the amended statute took effect. The parties disagree about whether it was legally erroneous for the trial court to retrospectively apply the amended version of section 213.111.2.

Missouri courts generally adhere to the "American Rule," which provides that each litigant must bear his or her own expenses, including attorney fees and costs. *Barr v. Mo. State Dep't of Soc. Servs.*, 565 S.W.3d 683, 691 (Mo. App. W.D. 2018). However, an exception exists if an award of costs is permitted by statute. *Id.*

Section 213.111.2 addresses a trial court's authority to award costs in an MHRA case. Prior to August 28, 2017, section 213.111.2, RSMo 2000, provided:

> ***The court*** may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual and punitive damages, and ***may award court costs*** and reasonable attorney fees ***to the prevailing party***, other than a state agency or commission or a local commission; ***except that, a prevailing respondent may be awarded court costs*** and reasonable attorney fees ***only upon a showing that the case is without foundation***.[13]

(Emphasis added.) The legislature amended section 213.111.2 effective August 28, 2017, as follows:

> ***The court*** may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual and punitive damages, and ***may award court costs*** and reasonable attorney fees ***to the prevailing party***, other than a state agency or commission or a local commission; except that, a prevailing respondent may be awarded reasonable attorney fees only upon a showing that the case was without foundation.

(Emphasis added.)

Both versions of section 213.111.2 generally authorize a trial court to award costs to the prevailing party in an MHRA case. However, the pre-August 28, 2017 version of section 213.111.2 restricted this authority, permitting an award of costs to a prevailing respondent (that is, a prevailing non-MHRA claimant) ***only*** where the MHRA claimant's "case [was] without foundation." The August 28, 2017 amendment eliminated this restriction on the trial court's authority to award costs to a prevailing respondent. The

---

[13]It is uncontested in this case that the trial court did not rely on the pre-August 28, 2017 version of section 213.111.2 to assess costs against Brummett. In other words, the trial court did not find that a showing had been made that Brummett's case was without foundation. We agree that on this record, it would have been difficult, if not impossible, for such a showing to have been made. The "without foundation" standard has been interpreted to require a showing "at the very least, that a plaintiff's case is frivolous, unreasonable, or groundless." *Mercer v. BusComm, Inc.*, 515 S.W.3d 238, 244-45 (Mo. App. E.D. 2017) (quoting *Loethen v. Cent. Mo. Urology Clinic, Inc.*, 48 S.W.3d 126, 130 (Mo. App. S.D. 2001)). Such "awards have been characterized as sanctions, and courts have warned that such awards 'should be approached with circumspection.'" *Id.* (quoting *Willard v. Raga*, 290 S.W.3d 768, 772 (Mo. App. E.D. 2009) (other citations omitted)).

28

change in the statute poses this question:  Can a statutory amendment which alters the trial court's statutory authority to award costs be applied retrospectively?

"The Missouri Constitution prohibits laws that are retrospective *in operation*." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 769 (Mo. banc 2007) (citing Mo. CONST. art. 1, section 13 ("That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted.")).  As a result:

> Amendments to statutes are presumed to operate prospectively, but there are two exceptions: (1) if the legislature clearly expresses an intent that the amendment be given retroactive application, either in the express language of the act or by necessary implication; or (2) the statute is merely procedural or remedial, rather than substantive.

*State ex rel. D&D Distributors, LLC v. Mo. Comm'n on Human Rights*, 579 S.W.3d 318, 324 (Mo. App. W.D. 2019) (quoting *Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 795 (Mo. App. W.D. 2018)).

The legislature did not clearly express an intent that the August 28, 2017 amendment to section 213.111.2 should be given retrospective application, either by express language in the act or by necessary implication.  Thus, we must determine whether the 2017 amendment to section 213.111.2 is merely procedural or remedial, rather than substantive. If so, retrospective application of the amendment is permitted.  If not, retrospective application of the amendment is constitutionally prohibited.

A law is procedural if it "prescribes a method of enforcing rights or obtaining redress for their invasion."  *Hess*, 220 S.W.3d at 769 (quoting *Wilkes v. Mo. Hwy. & Transp. Comm'n*, 762 S.W.2d 27, 28 (Mo. banc 1988)).  A remedial law is slightly different in that

29

those laws "affect only the remedy provided, including laws which merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Faulkner v. St. Luke's Hosp.*, 903 S.W.2d 588, 592 (Mo. App. W.D. 1995), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003)).  Substantive law, on the other hand, "creates, defines and regulates rights." *Hess*, 220 S.W.3d at 769 (quoting *Wilkes*, 762 S.W.2d at 28).  A substantive law is one that "take[s] away or impair[s] vested rights acquired under existing laws, or create[s] a new obligation, impose[s] a new duty, or attach[es] a new disability in respect to transactions or considerations already past." *State Bd. of Registration for the Healing Arts v. Warren*, 820 S.W.2d 564, 566 (Mo. App. W.D. 1991) (quoting *State ex rel. St. Louis-San Francisco Ry. Co. v. Buder*, 515 S.W.2d 409, 410 (Mo. banc 1974)).  Further, "[l]aws that provide for penalties where none existed before . . . are substantive and 'are always given only prospective application.'" *Hess*, 220 S.W.3d at 769 (quoting *Yellow Freight Sys., Inc. v. Mayor's Comm'n on Human Rights*, 791 S.W.2d 382, 387 (Mo. banc 1990)).  If a statute is either procedural or remedial, it applies to "to all pending cases -- that is, those cases not reduced to a final, unappealable judgment." *State ex rel. D&D Distribs., LLC*, 579 S.W.3d at 325 (quoting *Pierce v. State Dep't of Soc. Servs.*, 969 S.W.2d 814, 823 (Mo. App. W.D. 1998)).

Missouri courts have previously addressed whether statutes that impose costs and attorney fees on unsuccessful litigants are substantive, or merely procedural or remedial, in nature.  In *State Board of Registration for the Healing Arts v. Warren*, we concluded that section 536.087, which provides for a prevailing party in an agency proceeding or civil action arising therefrom to be awarded attorney fees and expenses, could not be applied

30

retrospectively to a case filed eighteen days before the statute's effective date of August 28, 1989. 820 S.W.2d at 565-66. Before August 28, 1989, no statute authorized an award of attorney fees and expenses against the state in an agency proceeding or civil action arising therefrom, a fact that weighed heavily in our decision. *Id.* at 566. We explained:

> The statute ***created a previously unrecognized right in certain prevailing litigants and imposed new obligations on the state by eliminating an immunity that it previously enjoyed***. These factors define the law as substantive and its retrospective application as violative of vested rights.

*Id.* (emphasis added).

We considered a similar issue in *Wellner v. Director of Revenue*. There, we addressed section 302.536, which allows for attorney fees and costs to be awarded if an appellate court reverses a trial court decision to uphold suspension or revocation of a driver's license. 16 S.W.3d at 353-54. Relying on *Warren*, we concluded that section 302.536 could not be applied retrospectively to an appeal that was pending when the statute took effect on August 28, 1996, as to allow the driver to recover his attorney fees and costs. *Id.* at 355. We explained:

> First, the legislature enacted [section] 302.536, a provision allowing for the collection of attorney fees and costs when successful on appeal in license suspension and revocation cases, after the Director [of Revenue] had acted to suspend Mr. Wellner's driving privilege. Second, the legislature had not provided for the collection of attorney fees and costs in these types of cases until it enacted [section] 302.536. Thus, [section] 302.536 created a new obligation or imposed a new duty, and, therefore, is substantive in nature. To apply the new statute to the Director's prior action would constitute a retrospective application of a substantive law since the statute increases the penalty after the conduct to be penalized has already occurred. Third, [section] 302.536 is silent on the issue of retrospective application, so it is presumed that the legislature did not intend to apply the statute retrospectively. Hence, we draw the same conclusion that we drew

31

in *Warren* that, under these circumstances, the law cannot be applied retrospectively.

*Id.* (citations omitted).

In *Hess v. Chase Manhattan Bank, USA, N.A.*, our Supreme Court considered an amendment to the Missouri Merchandising Practices Act ("MMPA")[14] which allowed private parties, in addition to the attorney general, to bring an enforcement action in connection with real estate transactions. 220 S.W.3d at 763, 768. The Supreme Court concluded that the amendment simply broadened the class of potential plaintiffs to include private parties, leaving the "contours of the obligations imposed on sellers of real estate by [the MMPA] unchanged." *Id.* at 770. Thus, the amendment was merely procedural and could be applied retrospectively. *Id.*

The Supreme Court in *Hess* also addressed other amendments to the MMPA and concluded that: (1) allowing a private litigant to recover "actual damages" could be applied retrospectively because the attorney general was already permitted to recover "restitution," rendering the amendment a "mere change in how damages are measured" and leaving the nature of the sellers' duty and remedy the same under the MMPA; (2) allowing a private litigant to recover his attorney fees could be applied retrospectively because the attorney general had been permitted to collect attorney fees under the MMPA since 1985 so that the obligation was not new, though the class of persons who could enforce the obligation had broadened; and (3) allowing for the recovery of punitive damages could not be applied retrospectively because, while a seller of real estate who violated the MMPA prior to the

_____

[14]Section 407.010 *et seq.*

32

2000 amendments was subject to civil penalties, "[t]he risk of imposition of punitive damages on a seller of real estate for an alleged violation of the [MMPA] is a 'new disability.'" *Id.* at 770-72.

Read collectively *Warren*, *Wellner*, and *Hess* stand for two propositions that are instructive, though not precisely on point: (1) if a statutory amendment imposes a *new* obligation to pay damages, costs, or attorney fees where none existed before, the amendment is substantive in nature and cannot be retrospectively applied; but (2) if a statutory amendment merely broadens the class of persons who may recover damages, costs, or attorney fees already authorized by statute, the amendment does not alter the "contours of the obligations imposed," and can be retrospectively applied.

The August 28, 2017 amendment to section 213.111.2 does not technically broaden the class of persons who may recover costs, as both the pre- and post-August 28, 2017 versions of section 213.111.2 authorize an award of costs to the prevailing party. However, the amendment materially expands *when* prevailing MHRA respondents can be awarded costs. On the other hand, the 2017 amendment does not technically impose an obligation or disability to pay costs where none existed before, as both the pre- and post-August 28, 2017 versions of section 213.111.2 generally authorize an award of costs to a prevailing party. However, the amendment materially alters the contours of the obligation or disability imposed on MHRA claimants to pay costs by expanding that risk to *every* case filed under the MHRA, in lieu of *only* those cases where a showing is made that the "case is without foundation." Fairly read, therefore, the amendment to section 213.111.2 creates trial court authority to award costs to a prevailing respondent where that authority did not

33

previously exist, and in the process, exposes colorable MHRA claims to an assessment of costs for the first time.  This is a substantive change.

Settled precedent supports this conclusion.  The showing that an MHRA case is "without foundation" has been held to require proof that a case is "frivolous, unreasonable, or groundless." *Mercer v. BusComm, Inc.*, 515 S.W.3d 238, 245 (Mo. App. E.D. 2017) (quoting *Loethen v. Cent. Mo. Urology Clinic, Inc.*, 48 S.W.3d 126, 130 (Mo. App. S.D. 2001)).  In other words, an award of costs to a prevailing respondent under the pre-August 28, 2017 version of section 213.111.2 "[has] been characterized as [a] sanction[], and courts have warned that such awards 'should be approached with circumspection.'"  *Id.* (quoting *Willard v. Raga*, 290 S.W.3d 768, 772 (Mo. App. E.D. 2009).  The pre-August 28, 2017 version of section 213.111.2 limited an MHRA claimant's exposure to responsibility for a prevailing respondent's costs to an existing risk of sanctions under Rule 55.03(c) and (d) for filing a frivolous, unreasonable, or groundless suit.  The American Rule thus remained in effect for prevailing respondents under the pre-August 28, 2017 version of section 213.111.2, as prevailing respondents were obligated to pay their own costs, unless sanctions were authorized.

The American Rule was completely abrogated by the August 28, 2017 amendment to section 213.111.2.  Now, an MHRA claimant who files a colorable MHRA claim is subject to an assessment of costs if the claim proves unsuccessful, even though the filing of the claim would not be subject to a sanctions award.  The 2017 amendment to section 213.111.2 "created a previously unrecognized right in certain prevailing litigants and imposed new obligations on [MHRA claimants] by eliminating an immunity [they]

34

previously enjoyed."  *Warren*, 820 S.W.2d at 566.  And the amendment to section 213.111.2 "increase[d] the penalty [that can be imposed on an MHRA claimant] after the conduct to be penalized[, the filing of an MHRA claim,] has already occurred."  *Wellner*, 16 S.W.3d at 355.  As such, we conclude that the 2017 amendment to section 213.111.2 is substantive and cannot be retrospectively applied.

It is conceded that the actions giving rise to Brummett's claims of discrimination, and the filing of Brummett's lawsuit, pre-date the effective date of the 2017 amendment to section 213.111.2.  And it is conceded that the trial court retrospectively applied the 2017 amendment to section 213.111.2 to assess costs against Brummett.  This was legal error.

Point Seven is granted.

## Conclusion

The trial court's Judgment is reversed insofar as it assesses costs against Brummett.  The trial court's Judgment is affirmed in all other respects.  Pursuant to our authority under Rule 84.14 to "give such judgment as the court ought to give," we modify the Judgment to remove the sentence "Costs are assessed against the Plaintiff" in the final order on Brummett's claim for religious discrimination, and in the final order on Brummett's claim for retaliation.  In lieu thereof, each party shall bear their own costs.


_____
Cynthia L. Martin, Judge


All concur

35